The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 23, 2019

## 2019COA83

**No. 18CA0589, *Marriage of Tooker* — Family Law — Post-Dissolution — Modification and Termination of Provisions for Maintenance, Support, and Property — Modification of Child Support**

In this post-dissolution of marriage dispute, a division of the court of appeals considers whether the district court erred in modifying husband's spousal maintenance and child support obligations by not including the tuition assistance and book stipend husband received under the Post-9/11 Veterans Educational Assistance Act of 2008 as "income for purposes of calculating" maintenance and child support. The division concludes that because these benefits were not available for husband's discretionary use or to reduce his daily living expenses, the district court properly excluded them when calculating husband's gross income.

The division also rejects mother's contentions that the district court erred in not including husband's potential timber income in calculating maintenance and child support and not making sufficient findings to modify husband's maintenance obligation.

COLORADO COURT OF APPEALS               **2019COA83**

Court of Appeals No. 18CA0589
El Paso County District Court No. 14DR3131
Honorable Erin Sokol, Judge

In re the Marriage of

Jennifer Ann Tooker,

Appellant,

and

Mark Glen Tooker,

Appellee,

and Concerning

El Paso County Child Support Services,

Intervenor.

ORDER AFFIRMED

Division VII
Opinion by JUDGE DUNN
Ashby and Martinez*, JJ., concur

Announced May 23, 2019

Beltz & West, P.C., Daniel A. West, Colorado Springs, Colorado, for Appellant

No Appearance for Appellee

Marrison Family Law, LLC, Mikayla Shearer, Colorado Springs, Colorado, for Intervenor

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     The Post-9/11 Veterans Educational Assistance Act of 2008, referred to here as the GI Bill, 38 U.S.C. §§ 3301-3327 (2018), provides eligible veterans with education benefits such as tuition assistance, a stipend for books and supplies, and a monthly housing allowance, 38 U.S.C. § 3313(a), (c)(1) (2018).  Mark Glen Tooker, a retired veteran, took advantage of the GI Bill's benefits to attend college.

¶ 2     In this post-dissolution of marriage dispute, Mark's former spouse, Jennifer Ann Tooker, challenges the district court's order modifying Mark's spousal maintenance and child support obligations.[1]  More specifically, she contends the district court erred in not (1) including the tuition assistance and book stipend Mark received under the GI Bill as income for purposes of calculating maintenance and child support; (2) including Mark's potential timber income in calculating maintenance and child support; and (3) making sufficient findings to modify Mark's maintenance obligation.  Because we disagree with these contentions, we affirm.

---

[1] For clarity, and without intending any disrespect to the parties, we will refer to the parties by their first names.

# I. Background

¶ 3     The district court entered a decree dissolving the parties' twenty-year marriage in 2015.  At that time, Mark and Jennifer had two biological children.  Jennifer also had a daughter, A.C.J.T., who was not Mark's biological child.

¶ 4     As part of the dissolution decree, and based on the parties' agreed parenting plan, the district court excluded A.C.J.T. from the child support calculation but ordered Mark to pay child support for the Tookers' two biological children, as well as maintenance.

¶ 5     Within the next few years, Jennifer and Mark each sought to modify Mark's monthly obligations.  For her part, Jennifer asserted that Mark was A.C.J.T.'s legal parent and moved to modify the child support obligation to include A.C.J.T.[2]  She also moved to modify maintenance, arguing that circumstances had changed due to a "more than 10%" decrease in her income.

¶ 6     For his part, Mark sought modification or termination of maintenance based on other changed circumstances, including his

---

[2] While the modification proceedings were pending, the Tookers' two biological children became emancipated.

reduced income (due to his military retirement) and, in his view, Jennifer's "dramatically increased income."

¶ 7     While the modification motions were pending, the juvenile court, in a separate proceeding not contested here, determined that Mark was A.C.J.T.'s legal father.

¶ 8     Not long after, the district court held an evidentiary hearing on the parties' motions to modify maintenance and Jennifer's motion to modify child support. It declined to modify Mark's maintenance obligation and, as relevant here, ordered Mark to pay $563 a month in child support for A.C.J.T. When calculating Mark's income, the district court included his military retirement; forty hours per week of imputed employment income; and, from the GI Bill, Mark's tuition assistance, book stipend, and housing allowance.

¶ 9     After the court entered the modification order, Mark sought reconsideration under C.R.C.P. 59. With respect to the GI Bill benefits, Mark argued that the tuition assistance and book stipend benefits should not be included as income for purposes of child support and maintenance. But he acknowledged that "the housing allowance stipend paid directly to [him] should be included." The district court agreed, finding that the tuition assistance payment

was "made directly to [Mark's] educational institution" and he was not free to use this money on daily living expenses. The court similarly found the GI Bill allotted the book stipend for Mark's "educational books" and he could not use the stipend for discretionary expenses.

¶ 10 Given this, the district court excluded the GI Bill tuition assistance and book stipend benefits from Mark's income. It then recalculated his income using his military retirement, the GI Bill housing allowance, and forty hours per week of imputed employment income. The court concluded that Mark's monthly income was $3749. Based on the recalculated income, the district court ordered Mark to pay $553 per month in child support. And applying "the statutory formula" for maintenance to Mark's recalculated income, the district court found that he owed "$0.00" and therefore terminated his maintenance obligation.

## II. The GI Bill Benefits

¶ 11 Jennifer contends the district court erred in excluding Mark's GI Bill tuition assistance and book stipend benefits from his income for purposes of calculating maintenance and child support. We are not persuaded.

¶ 12    We review maintenance and child support orders for an abuse of discretion. *See In re Marriage of Thorstad*, 2019 COA 13, ¶ 27 (maintenance modification); *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011) (child support modification). But we review de novo whether the court applied the correct legal standard. *See Thorstad*, ¶ 27 (maintenance modification); *Davis*, 252 P.3d at 533 (child support modification).

¶ 13    A district court must determine the parties' gross incomes before calculating maintenance and child support. *See* § 14-10-114(3)(a)(I)(A), C.R.S. 2018 (maintenance); § 14-10-115(1)(b)(I), (5)(a), C.R.S. 2018 (child support). A party's gross income for this purpose means "income from any source." § 14-10-114(8)(c)(I); § 14-10-115(5)(a)(I).

¶ 14    The statutes, however, say nothing about GI Bill benefits, neither including them in the definition of gross income, *see* § 14-10-114(8)(c)(I) (nonexclusive list of income included in definition of gross income for maintenance); § 14-10-115(5)(a)(I) (same for child support), nor excluding them from the definition, *see* § 14-10-114(8)(c)(II) (excluding certain income from gross

income for purposes of maintenance); § 14-10-115(5)(a)(II) (same for purposes of child support).

¶ 15    And Jennifer points us to no authority — nor have we found any — that has included (or excluded) GI Bill tuition assistance and book stipend benefits in a former spouse's gross income for purposes of maintenance and child support. But courts have considered whether payments made for a spouse's benefit are includable as gross income under the maintenance and child support statutes when those payments are not currently available for the spouse's general living expenses. *See, e.g.*, *Davis*, 252 P.3d at 535; *In re Marriage of Mugge*, 66 P.3d 207, 210 (Colo. App. 2003).

¶ 16    *Mugge* is particularly instructive. There, the father retired in exchange for an employer contribution to his pension plan. 66 P.3d at 209. On his retirement, the father elected not to take a distribution but to roll his pension into another plan. *Id.* The mother moved to modify the father's child support obligation, arguing the employer's pension contribution should be included as gross income for child support purposes. *Id.* at 209-10. The *Mugge* division disagreed. *Id.* at 211. It recognized that the father did not have the option of directly receiving the contribution "as wages." *Id.*

And it thus concluded that, before actual distribution to the father is made, employer contributions to his retirement account or pension plan do not "constitute gross income" for child support purposes. *Id.*

¶ 17    Some years later, the *Davis* division considered whether an employer's contributions to the husband's 401(k) plan and health insurance plans should be included in his income for child support purposes. 252 P.3d at 534-35. The division concluded that the district court did not err in excluding the employer's contributions from the husband's gross income. *Id.* at 535. In reaching this conclusion, it found that, as in *Mugge*, the husband "did not have the option to take [the employer's] contributions as wages and use them for general living expenses." *Id.*; *see also In re Marriage of Mellott*, 93 P.3d 1219, 1221-22 (Kan. Ct. App. 2004) (concluding that employer tuition reimbursements were not income under Kansas's child support guidelines because the tuition reimbursements did not reduce the father's living expenses).

¶ 18    The principle that emerges from these cases is that, to be included as gross income for purposes of maintenance and child support, benefits received by an individual (if not otherwise

excluded from the definition of gross income in the maintenance and child support statutes) must be available for the individual's discretionary use or to reduce daily living expenses. With this in mind, we turn to the tuition assistance and book stipend benefits Mark received under the GI Bill.

¶ 19    Jennifer does not dispute that Mark's tuition assistance benefit was not paid to him but, rather, was paid directly to his college. A letter from the Department of Veterans Affairs introduced at the modification hearing confirmed that the Department "issued a tuition and fees payment to [Mark's] school[] on [his] behalf." And nothing in the record shows that Mark had any ability to receive the GI Bill tuition assistance benefit personally or use it for general living or other discretionary expenses.

¶ 20    Because the tuition assistance benefit was not available to Mark for general living expenses and would in no discernable way assist him in paying maintenance or child support, we conclude that the district court properly excluded the tuition assistance benefit as gross income for purposes of calculating maintenance and child support. *See Davis*, 252 P.3d at 535; *Mugge*, 66 P.3d at 211; *see also Mellott*, 93 P.3d at 1221-22.

¶ 21    We reach the same conclusion with respect to the book stipend.  Though the relatively modest stipend appears to be paid directly to Mark, the record supports the district court's finding that it was "allotted for [his] educational books and . . . may not be used at [his] discretion to decrease his daily living expenses."  And Jennifer neither argues otherwise nor points to any record evidence suggesting differently.  Given this, the district court did not abuse its discretion in excluding the book stipend from Mark's gross income.  *See Davis*, 252 P.3d at 536 (concluding that the district court did not err in excluding the employer's health insurance stipend from the employee's gross income for child support purposes because the stipend was not significant and did not reduce living expenses); *cf. In re Marriage of Long*, 921 P.2d 67, 69 (Colo. App. 1996) (receiving free military housing and utilities was income for purposes of child support because the noncash benefit relieved the husband of "what is arguably his primary necessary expense" and increased his income "by approximately 20%").

¶ 22    We are not persuaded otherwise by Jennifer's reliance on *Oley v. Branch*, 762 S.E.2d 790 (Va. Ct. App. 2014).  There, the Virginia Court of Appeals concluded that a Federal Pell Grant (a form of

financial assistance given to eligible students with no obligation to repay) was part of the mother's gross income for purposes of child support. *Id.* at 796-97. But in reaching this conclusion, the court focused on the language of Virginia's child support statute that states gross income includes "all income from all sources" and the fact that Virginia courts had interpreted this language to mean any source of income "*unless specifically excluded.*" *Id.* at 796 (quoting *Frazer v. Frazer*, 477 S.E.2d 290, 299-300) (Va. Ct. App. 1996)). Because the child support statute did not "specifically exclude federal education grants," the court there concluded that the mother's Federal Pell Grant was part of her gross income. *Id.* at 797. *But see In re Marriage of Syverson*, 931 P.2d 691, 698 (Mont. 1997) (concluding that only the portion of a Federal Pell Grant that exceeded the mother's tuition bill should be considered gross income because the Montana child support rule defined gross income to include "grants . . . *intended to subsidize the parent's living expenses*") (citation omitted). Because Colorado courts interpret this state's maintenance and child support statutes differently, *Oley* does not change our analysis. *See Davis*, 252 P.3d at 535; *Mugge*, 66 P.3d at 211.

¶ 23    For these reasons, we perceive no error in the district court's exclusion of the GI Bill tuition assistance and book stipend benefits from Mark's gross income for purposes of modifying Mark's maintenance obligation and calculating child support for A.C.J.T.

### III.  Potential Income

¶ 24    Jennifer next contends the court erred in refusing to impute additional "potential income" to Mark when determining his gross income.  We again are not persuaded.

¶ 25    If a party is voluntarily unemployed or underemployed, child support and maintenance are calculated based on the party's potential income.  § 14-10-114(8)(c)(IV) (maintenance); § 14-10-115(5)(b)(I) (child support).

¶ 26    "Potential income" is described as the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability.  *People in Interest of A.R.D.*, 43 P.3d 632, 637 (Colo. App. 2001).  In determining potential income, the district court may consider several factors, including the party's historical income, education, and work experience.  *See id.*

¶ 27    The district court has broad discretion in determining income, and whether to impute income to a party is typically a question of

11

fact that we will not disturb if supported by the record. *See People v. Martinez*, 70 P.3d 474, 480 (Colo. 2003); *see also In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010).

¶ 28 At the hearing on the motions to modify child support and maintenance, Jennifer argued Mark should be imputed income for forty hours per week of employment. She also argued that the court should consider timber on Mark's property as a resource when determining whether his maintenance obligation should be modified due to changed circumstances. In contrast, Mark argued that he should not be imputed any additional income because he is enrolled as a full-time student at an online college.

¶ 29 The district court rejected Mark's argument and imputed "40 hours of employment income" at minimum wage to him (a decision not challenged here). Although the court acknowledged that Mark had available "timber from a property he owns," it declined to impute any additional amounts to Mark for this "potential income."

¶ 30 Jennifer argues that the district court should have imputed additional potential income to Mark based on his timber ownership. In particular, she argues that Mark could receive additional income through timber sales, as he did in 2015. But she points us to no

authority supporting her contention that a one-time (or possible future) sale of a good should be included as imputed income — in addition to forty hours per week of imputed employment income. *See, e.g.*, *A.R.D.*, 43 P.3d at 637 (describing potential income as related to full-time job); *In re Marriage of Jaeger*, 883 P.2d 577, 582 (Colo. App. 1994) (considering historical employment income when imputing income).

¶ 31    In any event, Mark testified he no longer received income from the timber. And while Jennifer testified Mark "could make a phone call and have a check well over a million dollars," nothing in the record shows the amount or value of timber available for sale. So, any inferences and conclusions to be drawn from the conflicting evidence were for the district court to resolve. *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003).

¶ 32    We therefore conclude the district court didn't abuse its discretion in declining to impute non-employment income related to possible future timber sales. Given this conclusion, we necessarily reject Jennifer's related argument that the court "made no findings of fact as to the amount of this potential income."

## IV. Modification of Maintenance

¶ 33    Jennifer next argues that the district court failed to make sufficient findings of fact and conclusions of law in modifying Mark's maintenance. We don't agree.

¶ 34    The decision whether to modify maintenance is within the district court's sound discretion based on the facts presented. *In re Marriage of Nelson*, 2012 COA 205, ¶ 27. Absent an abuse of that discretion, we will not disturb the court's ruling on review. *Id.*

¶ 35    A district court may modify maintenance on a showing of changed circumstances so substantial and continuing as to make the existing maintenance terms unfair. § 14-10-122(1)(a), C.R.S. 2018; *see Nelson*, ¶ 26. In making this determination, the court must examine the circumstances pertinent to initially awarding maintenance under section 14-10-114, including the relevant circumstances of both parties. *In re Marriage of Kann*, 2017 COA 94, ¶ 73; *Nelson*, ¶ 26. However, the determination is not the same as when making an original award; rather, the issue when considering a motion to modify is whether the terms of the original award have become unfair. *In re Marriage of Weibel*, 965 P.2d 126, 128-29 (Colo. App. 1998).

¶ 36     After the hearing on the parties' modification motions, the district court found that since the entry of the initial maintenance award, Mark had retired from the military, he was a full-time student, and his income had decreased to $3749 per month (from $6371 when maintenance was first ordered). *See* § 14-10-114(3)(c)(II), (V); *see also* § 14-10-122(1)(a).

¶ 37     With respect to Jennifer's income, the district court concluded that she earned roughly the same monthly income at the time of the modification hearing as she had at the time the court initially awarded maintenance. *See* § 14-10-114(3)(c)(I), (V); *see also* § 14-10-122(1)(a).

¶ 38     Based on this evidence, the district court found that Mark had "shown a change in circumstances under . . . § 14-10-122, which is so substantial and continuing as to make the terms of" the original maintenance award "unfair." Applying the maintenance guidelines, the district court found that Mark's "suggested award of $0.00" was "fair, equitable, and not unconscionable."

¶ 39     The district court's findings sufficiently support its determination that substantial and continuing changed circumstances made the initial maintenance award unfair. *See*

15

*Kann*, ¶ 73. We therefore don't agree with Jennifer that the district court "made no findings regarding the factors listed under [section] 14-10-114(3)(c)."

## V. Conclusion

¶ 40    We affirm the district court's order terminating Mark's maintenance obligation and modifying his child support obligation.

JUDGE ASHBY and JUSTICE MARTINEZ concur.