23CA0150 Marriage of Luetters 07-25-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0150 Jefferson County District Court No. 21DR30252 Honorable Lily W. Oeffler, Judge In re the Marriage of Byron Luetters, Appellant, and Michele Luetters n/k/a Michele McGlasson, Appellee. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE J. JONES Welling and Schock, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 25, 2024 Law Office of Dailey & Pratt, LLC, Lisa M. Dailey, Joel M. Pratt, Colorado Springs, Colorado, for Appellant Fourth Street Law, LLC, Caroline C. Cooley, Christopher J. Linas, Castle Rock, Colorado, for Appellee 
 1 ¶ 1 In this dissolution of marriage proceeding involving Byron Luetters (husband) and Michele Luetters, now known as Michele McGlasson (wife), husband appeals those portions of the permanent orders concerning property division and maintenance. We affirm the judgment and remand the case to the district court to resolve wife’s request for appellate attorney fees under section 14-10-119, C.R.S. 2023. I. Background ¶ 2 The parties married in 1995 and have three children. ¶ 3 After the parties separated in late 2018, wife stayed in the marital home and husband provided her with financial support. ¶ 4 In 2021, husband petitioned to dissolve the marriage. Around that time, he reported that he was the chief financial officer (CFO) for Landmark Management Services, LLC (Landmark), earning approximately $254,000 per year. Wife, for her part, reported that she was a delivery driver and plasma donor, earning $1,320 per year. ¶ 5 In January 2022, husband indicated that Landmark, through no fault of his own, had demoted him and intended to reduce his yearly income to $197,000. Then, a few months later, Landmark 
 2 decided to let him go, giving him a severance payout (based on his former CFO base salary) plus a disbursement for his unused paid time off (PTO).
1 ¶ 6 Beginning on June 9, 2022, the district court held a four-day evidentiary hearing. The court dissolved the marriage and entered permanent orders. It divided the marital estate disproportionately in wife’s favor as follows: Marital Asset/Debt Marital Value Wife’s Portion Husband’s Portion Equity in the Marital Home $333,628 $333,628 Investment/Retirement Accounts $117,052 $117,052 Bank Accounts $62,774 $45,520 $17,254 Vehicles $27,276 $18,156 $9,120 Personal Property $1,900 $1,150 $750 Debts ($77,666) ($3,014) ($74,652) TOTAL $464,964 $395,440 $69,524 1 It appears that Landmark didn’t reduce husband’s salary but rather continued to pay him his CFO salary until he left Landmark. But the record isn’t entirely clear in this regard. 
 3 ¶ 7 It then ordered husband to pay wife modifiable maintenance of $3,900 per month for an indefinite term and to pay $10,000 of her attorney fees under section 14-10-119. Because the parties’ youngest child was eighteen years old, the court didn’t enter any parental responsibilities orders. On September 23, 2022, the court entered a dissolution decree and a written judgment tracking its oral ruling. ¶ 8 The district court subsequently denied husband’s C.R.C.P. 59 post-trial motion, which sought, among other things, reconsideration of the unequal property division. In doing so, the court further explained and clarified its reasoning behind the property division. II. Property Division A. Standard of Review ¶ 9 A district court has great latitude to make an equitable property division based on the facts and circumstances of each case, and we won’t disturb its decision absent a showing of an abuse of its discretion. In re Marriage of Collins, 2023 COA 116M, ¶ 19; see § 14-10-113(1), C.R.S. 2023. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, 
 4 or when it misconstrues or misapplies the law. In re Marriage of Fabos, 2022 COA 66, ¶ 16. B. Relevant Law ¶ 10 “The property division must be equitable, but not necessarily equal.” In re Marriage of Wright, 2020 COA 11, ¶ 3; see In re Marriage of Gallo, 752 P.2d 47, 55 (Colo. 1988) (“The key to an equitable distribution is fairness, not mathematical precision.”). In making an equitable division, the district court must consider all relevant factors, including, among other things, each spouse’s contribution to the acquisition of the marital property, including the contribution of a spouse as homemaker, and each spouse’s economic circumstances. § 14-10-113(1)(a), (c); In re Marriage of Evans, 2021 COA 141, ¶ 50. ¶ 11 The weighing of these factors is within the district court’s sound discretion. In re Marriage of Powell, 220 P.3d 952, 959 (Colo. App. 2009). The court doesn’t need to make specific findings as to each factor so long as its findings allow us to determine that its decision is supported by competent evidence. Collins, ¶ 19. And we may look to the court’s oral ruling as supplementing its written order. See In re Marriage of Thorburn, 2022 COA 80, ¶ 9 n.1. 
 5 C. Discussion ¶ 12 Husband contends that the disproportionate property division cannot stand. To get there, he argues that the district court didn’t consider the factors in section 14-10-113(1), make adequate findings, or explain its reasoning. We aren’t persuaded by these arguments. ¶ 13 In dividing the marital estate, the district court made the following findings: • This was a long-term marriage lasting twenty-six years. See § 14-10-113(1) (property division requires consideration of all relevant factors). • Husband was the sole source of income for most, if not all, of the marriage. See § 14-10-113(1)(a). • During the marriage, wife provided little financially but contributed as a full-time homemaker, taking care of the children and maintaining the household. See id. • Although currently unemployed, husband could a earn a minimum of $220,000 per year. See § 14-10-113(1)(c). • In fact, husband confidently represented that he could find a position within the same field earning a salary 
 6 similar to that he had earned as CFO for Landmark. See § 14-10-113(1). • In 2020, husband earned roughly $326,536, which included a bonus. See id. • Upon leaving Landmark, husband would receive eight weeks of severance pay at his former CFO salary as well as a disbursement for his unused PTO. See § 14-10-
113(1)(c). • Wife hadn’t “worked outside the home in years and therefore [had] not built up a resume and work history.” See § 14-10-113(1). • Wife received a high school diploma and was taking a few college classes. See id. • Wife was diagnosed with a vision impairment in 2021 and granted accommodations at her college. See id. • Wife will begin work at a much lower salary than husband given her limited employment history and education, whereas husband “worked throughout the marriage thereby building a significant career and is able 
 7 to earn a salary many times higher than wife.” See § 14-
10-113(1)(c). • Wife had the potential to earn $40,726 per year. See id. • The bulk of the debt should be allocated to husband because he had “access more immediately to payments of cash via severance and subsequent employment.” See id. • There were minimal assets to divide possibly due to the parties’ decision to spend $500,000 of husband’s earnings on the children’s private school, which was no longer an expense for him. See id. ¶ 14 The district court’s factual findings, which enjoy ample record support, demonstrate that it considered all relevant factors. See § 14-10-113(1)(a), (c); see also Evans, ¶ 50. And those findings are sufficient to provide us with a clear understanding of its reasons for the property division. See Collins, ¶ 19. So, contrary to husband’s argument, the court didn’t err in this regard. ¶ 15 Nor are we persuaded by husband’s related argument that the district court erred because it improperly considered the vast disparity in the parties’ future earning capabilities. Our supreme court has declared it “obvious that a spouse’s earning capabilities 
 8 are properly part of the ‘economic circumstances’ the court must consider in compliance with section 14-10-113(1).” See In re Marriage of Faulkner, 652 P.2d 572, 574 (Colo. 1982) (“[I]t does not follow that the court may not consider the earning capabilities of one spouse when determining a fair property distribution.”); see also In re Marriage of Morehouse, 121 P.3d 264, 265, 266-67 (Colo. App. 2005) (in achieving an equitable division of property, the district court may consider anticipated social security benefits as a relevant economic circumstance); Wright, ¶ 10 (district court didn’t abuse its discretion in dividing property where the husband’s income was more than four times the wife’s because it could reasonably have concluded that he had the financial means with which to pay more of the marital debts). ¶ 16 And to the extent that husband asks us to reweigh the evidence or the section 14-10-113(1) factors in his favor and substitute our judgment for that of the district court, we decline the invitation. See In re Marriage of Nelson, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where “there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court.”); see 
 9 also Thorburn, ¶ 49 (it is for the district court, not the reviewing court, to determine witness credibility and the weight, probative force, and sufficiency of the evidence, including the inferences and conclusions to be drawn therefrom); Powell, 220 P.3d at 959. ¶ 17 Husband also argues that the property division should be reversed given that the district court didn’t consider that the retirement accounts allocated to him were illiquid. According to him, “he received a bit of retirement and more debt and obligations than he could meet.” But the court specifically addressed that issue, finding that the parties had very few marital assets to divide and that husband could manage the marital debts with his severance payout, PTO disbursement, and subsequent employment. We observe that husband was also awarded several bank accounts containing more than $17,000. And he doesn’t point us to where he presented evidence regarding the potential lost value incurred by liquidating his retirement funds. In all, we can’t say that the court abused its discretion on this point. See In re Marriage of Davis, 618 P.2d 692, 694 (Colo. App. 1980) (district court didn’t abuse its discretion when it allocated to the wife all the parties’ cash and 
 10 liquid assets, leaving the husband with practically no marketable or liquid assets while saddling him extensive debts). ¶ 18 We understand husband to maintain that the district court conflated property division and maintenance when it “justified” its unequal property division with wife’s “need for support.” The record belies this claim. After considering the relevant factors under section 14-10-113(1) and making express factual findings, the court concluded that the property division was “equitable within the context of the lengthy marriage, the disparity in education, job history, and earning potential along with immediate income disparities.” Thus, the court didn’t rely on wife’s need for support or maintenance when it divided the parties’ property. ¶ 19 Because the district court’s decision to divide the marital property equitably, albeit disproportionately in wife’s favor, was within the court’s very broad discretion, we won’t disturb it. See Collins, ¶ 19. III. Maintenance A. Standard of Review ¶ 20 The district court has broad discretion to award maintenance, if any, that is fair and equitable to both spouses based on the 
 11 totality of the circumstances. § 14-10-114(3)(e), C.R.S. 2023; see also In re Marriage of Vittetoe, 2016 COA 71, ¶ 14. We won’t disturb the court’s award of maintenance absent a showing of an abuse of that discretion. See In re Marriage of Medeiros, 2023 COA 42M, ¶ 58. B. Relevant Law ¶ 21 Section 14-10-114(3) sets forth a specific process that a court must follow when considering a maintenance request. Wright, ¶ 13. ¶ 22 The district court must first make findings regarding each spouse’s income, the marital property apportioned to each spouse, the spouses’ financial resources, the spouses’ reasonable financial needs established during the marriage, and the taxability of the maintenance awarded. § 14-10-114(3)(a)(I); Wright, ¶¶ 14, 19. ¶ 23 Next, the district court must determine an amount and a term of maintenance that are fair and equitable to the parties. § 14-10-
114(3)(a)(II); Wright, ¶ 15. ¶ 24 Although the district court generally must also find and consider the guideline amount and term of maintenance under sections 14-10-114(3)(b)(I) and (3)(b)(II), those guidelines don’t apply when, as here, the spouses’ combined annual adjusted gross 
 12 income exceeds $240,000. § 14-10-114(3.5); In re Marriage of Herold, 2021 COA 16, ¶ 26. Still, the court isn’t precluded from considering the guidelines. See § 14-10-114(3.5). In this context, the court must determine the appropriate amount of maintenance based on the statutory factors in section 14-10-114(3)(c). See § 14-
10-114(3.5). Those factors include the recipient spouse’s financial resources and ability to meet her reasonable needs independently; the payor spouse’s financial needs and ability to meet his reasonable needs while paying maintenance; the lifestyle during the marriage; the distribution of marital property; each spouse’s income, employment, and employability, obtainable through reasonable diligence and additional training or education; whether a spouse has historically earned a higher or lower income; the duration of the marriage; the payment of temporary maintenance; each spouse’s age and health; significant economic or noneconomic contribution to the marriage; and any other relevant factor. § 14-
10-114(3)(c)(I)-(X), (XIII). ¶ 25 The district court doesn’t have to make specific factual findings on each factor so long as its decision gives us a clear understanding of the basis of its order. See Wright, ¶ 20; see also 
 13 In re Marriage of Stradtmann, 2021 COA 145, ¶ 32; § 14-10-
114(3)(e) (“The court shall make specific written or oral findings in support of the amount and term of maintenance awarded pursuant to this section or an order denying maintenance.”). ¶ 26 And when a marriage exceeds twenty years, like this one, the district court can award maintenance for an indefinite term. § 14-
10-114(3)(b)(II)(B). ¶ 27 The last step is for the district court to determine whether the requesting spouse qualifies for maintenance, meaning that she lacks sufficient property, including marital property awarded, to provide for her reasonable needs and is unable to support herself through appropriate employment. See § 14-10-114(3)(a)(II)(C), (3)(d); Wright, ¶ 16. C. Discussion 1. Factual Findings and Consideration of the Relevant Factors ¶ 28 Husband contends that the district court abused its discretion by determining maintenance because it failed to make factual findings concerning the parties’ financial resources under section 14-10-114(3)(a)(I)(C), wife’s reasonable needs under section 14-10-
 14 114(3)(a)(I)(D), and their lifestyle during the marriage under section 14-10-114(3)(c)(III). We disagree. ¶ 29 The district court found that (1) husband and wife had the potential to earn annual incomes of $220,000 and $40,726, respectively; (2) from the limited marital estate, wife was allocated the marital home and husband was allocated the investment/retirement accounts; (3) wife would be responsible for mortgage payments, taxes, and expenses on the marital home; (4) the parties lived a “comfortable lifestyle”; (5) during most of the marriage, husband was the sole income earner and wife worked as a homemaker; (6) husband had an established career and would be able to earn a salary many times higher than wife; (7) wife was financially disadvantaged given her lack of education and work experience; (8) wife was currently in college pursuing a bachelor’s degree; (9) wife was diagnosed with a vision impairment; and (10) the parties had a long-term marriage. ¶ 30 From those findings and after looking at the guidelines, the district court ordered husband to pay wife modifiable maintenance of $3,900 per month for an indefinite term, determining that wife lacked sufficient income from marital property and employment to 
 15 meet her reasonable needs and that husband had the ability to pay the amount of maintenance awarded and still meet his own reasonable needs. ¶ 31 We conclude that the district court adequately set forth its factual findings on the parties’ financial resources under 14-10-
114(3)(a)(I)(C). The court found that the marital estate was essentially limited to the marital home and the parties’ investment/retirement accounts. The court also highlighted the disparity in the parties’ potential incomes. ¶ 32 As to wife’s reasonable needs under section 14-10-
114(3)(a)(I)(D), the district court expressly found that she would be solely responsible for all expenses associated with the marital home, including the mortgage and taxes. And given that the court said that it adopted the parties’ stipulated exhibits as identified in their joint trial management certificate, we may presume that it knew of and considered her other reasonable needs and expenses as reflected in her sworn financial statement. See In re Marriage of Udis, 780 P.2d 499, 504 (Colo. 1989); see also In re Marriage of Salby, 126 P.3d 291, 296 (Colo. App. 2005) (the district court may rely on parties’ financial affidavits to support its findings). 
 16 ¶ 33 Contrary to husband’s insistence, the district court wasn’t required to make specific factual findings on the parties’ lifestyle during the marriage under section 14-10-114(3)(c)(III). See Stradtmann, ¶ 32. The court nevertheless credited husband’s testimony that they enjoyed a “comfortable” lifestyle. The court also said that it “looked at [their] standard of living during the marriage.” ¶ 34 We reject husband’s argument that the district court “disregarded” the fact that the parties had been separated for several years before he petitioned for dissolution and that he had provided wife with consistent financial support throughout the dissolution proceeding. The court specifically found that he had provided financial support to her since the parties separated in 2018. 2. Maintenance Amount ¶ 35 Next, husband argues that the district court didn’t sufficiently explain how it arrived at a monthly maintenance amount of $3,900. But the evidence shows that wife’s sworn financial statement represented that she had roughly $6,500 in reasonable expenses each month. And the court explained that the monthly maintenance award of $3,900, when added to her potential income 
 17 of $3,393, would meet her monthly reasonable expenses. Because we can understand the basis of the court’s decision, we don’t see any reason to disturb it. See Wright, ¶ 20. 3. Maintenance Term ¶ 36 Husband claims that the district court’s decision to award wife indefinite or lifetime maintenance isn’t supported by the record, as wife testified that “she intended to become self-supporting” after finishing her bachelor’s degree, earning her master’s degree, and transitioning back into the work force as a therapist. Again, we aren’t persuaded. As noted above, a court may consider a spouse’s “employability, obtainable through reasonable diligence and additional training or education.” See § 14-10-114(3)(c)(V). And a vocational expert, who assessed wife’s employment prospects, testified that her educational goals were “unrealistic,” saying that she would be in her mid-fifties before she meets them, if she ever does so. ¶ 37 Husband also argues that the district court failed to consider the parties’ ages. The evidence presented to the court included the parties’ ages, and we may presume that the court considered this circumstance. See Udis, 780 P.2d at 504. 
 18 4. Husband’s Imputed Income ¶ 38 Husband contends that the district court erred first by not expressly finding him voluntarily unemployed and then also by imputing to him yearly income of $220,000. We disagree. ¶ 39 In calculating maintenance, income means a party’s actual gross income if the spouse is fully employed. § 14-10-114(8)(a)(II). If, however, a spouse is voluntarily unemployed, maintenance is calculated based on that spouse’s potential income. § 14-10-
114(8)(c)(IV). “‘[P]otential income’ is described as the amount a party could earn from a full-time job commensurate with the party’s demonstrated earning ability.” In re Marriage of Tooker, 2019 COA 83, ¶ 26. ¶ 40 The district court has broad discretion in determining income for maintenance purposes, and whether to impute income to a spouse is typically a question of fact, the determination of which we won’t disturb if it has record support. See People v. Martinez, 70 P.3d 474, 480 (Colo. 2003); see also Tooker, ¶ 27. ¶ 41 At the initial permanent orders hearing on May 23, 2022, husband told the district court that Landmark had recently ended 
 19 his employment. After the court expressed its frustration about the last-minute disclosure, husband’s attorney said the following: [Husband] is not here asking the [c]ourt not to impute income to him. He understands that he’s capable of making a certain amount. What that amount is . . . is in dispute. However, he’s not here to say I lost my job, so I shouldn’t have to pay maintenance. . . . . [Husband] is not requesting that the [c]ourt forego [sic] imputing income. The court eventually continued the hearing to June 9, 2022. ¶ 42 At the June 9 hearing, husband testified that the next day would be his last day with Landmark. He asserted that he should be imputed yearly income of $197,000, his “actual salary” in January 2022. Yet when he was asked what the “minimum amount” he could earn was, he replied that a yearly salary ranging between $175,000 and $225,000 was “achievable.” A vocational expert later testified that husband was “highly employable,” would not have any difficulty landing a job in his field, and could earn as much as $275,000 per year. The expert added that husband was not performing a “valid job search.” 
 20 ¶ 43 While the district court credited the vocational expert’s opinion, the court determined that it was more appropriate to impute to husband a yearly income of $220,000. In support, the court found that husband had “marketable skills” and could find work in his field given the wide availability of jobs. The court also emphasized that husband had “expressed directly . . . that he could find a position with a similar salary.” ¶ 44 Those findings, combined with the evidence in the record, imply a finding that husband was voluntarily unemployed by choosing not to earn the full-time income he was capable of earning. See Nelson, ¶ 41 (implied findings are sufficient); see also Martinez, 70 P.3d at 480 (“A court may interpret a parent’s lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation.”). ¶ 45 And because the record, including husband’s admissions, supports the amount of income that was imputed to him, we won’t disturb the court’s ruling. See Martinez, 70 P.3d at 480; see also Tooker, ¶ 27. 
 21 IV. Attorney Fees in the District Court ¶ 46 Husband requests that if we reverse the property division, we instruct the district court on remand to reconsider its 14-10-119 attorney fee award. See In re Marriage of de Koning, 2016 CO 2, ¶ 26 (when a district court is required to revisit property division, it must also re-evaluate its determination on attorney fees in light of the updated property division). Given our disposition, we decline to do so. V. Appellate Attorney Fees and Costs ¶ 47 Wife asks us to order husband to pay her appellate attorney fees under section 14-10-119, asserting that the parties’ financial resources are disparate. We remand her request to the district court. See In re Marriage of Martin, 2021 COA 101, ¶ 42; see also § 14-10-119; C.A.R. 39.1. ¶ 48 Wife is also entitled to an award of her appellate costs. See C.A.R. 39(a)(2) (costs are taxed against the appellant if a judgment is affirmed). 
 22 VI. Disposition ¶ 49 The judgment is affirmed, and the case is remanded to the district court to resolve wife’s section 14-10-119 appellate attorney fees request. JUDGE WELLING and JUDGE SCHOCK concur.