25CA1807 Marriage of Griffis 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1807
Mesa County District Court No. 13DR724
Honorable Gretchen B. Larson, Judge

---

In re the Marriage of

Larry Griffis,

Appellant,

and

Janette Griffis n/k/a Janette Romero,

Appellee.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GROVE
Yun and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Cordell Law, LLP, Keri E. McCallister, Colorado Springs, Colorado, for Appellant

Catherine C. Burkey, Grand Junction, Colorado, for Appellee

¶ 1    Larry E. Griffis (father) appeals the district court's order modifying in part and adopting in part a magistrate's ruling on his request to change parenting time and child support.[1]  We affirm the portion of the order concerning child support.  We reverse the portion of the order concerning parenting time and remand the issue to the district court for further proceedings.

I.    Relevant Facts and Procedural History

¶ 2    The court dissolved the marriage between father and Janette Griffis, now known as Janette Romero (mother), and ordered mother to pay child support related to their three children — Jo.G, Ja.G, and E.G.

¶ 3    In 2020, the magistrate modified the child support order, requiring mother to pay $910 per month.  The magistrate found that Ja.G. was emancipated and excluded from the child support determination.  The magistrate also determined that although Jo.G., who lived exclusively with mother, had reached the age of emancipation, she was disabled due to her rheumatoid arthritis and

---

[1] The district court also adopted the magistrate's decision to modify decision-making responsibility.  Father does not appeal that portion of the order.

her parents had a continuing duty to support her. *See* § 14-10-115(13)(a)(II), C.R.S. 2025. The magistrate included Jo.G. in the child support determination but found that, at that time, her part-time income alleviated father's obligation to pay child support related to her.

¶ 4 In 2023, father filed a motion to modify parenting time and child support. He asked the court to allocate him majority parenting time with E.G. (the remaining minor child) and to allow mother to exercise parenting time two weekends per month. He also argued that the court should find that Jo.G. was emancipated for child support purposes because she was no longer disabled and could adequately care for herself.

¶ 5 The magistrate denied father's proposed parenting time modification, finding that he had not established the "threshold requirement of endangerment." The magistrate also rejected father's argument that Jo.G. was emancipated. The magistrate found that Jo.G.'s health had declined during the previous year and that father had failed to demonstrate that she was no longer physically disabled. The magistrate further determined that father's income had substantially increased since 2020, warranting a

2

modification of child support. The magistrate adopted father's proposed child support calculation and ordered mother to pay $820 per month for E.G. The magistrate did not address child support for Jo.G.

¶ 6 Father and mother both petitioned for district court review of the magistrate's order. Father challenged the magistrate's denial of his request to modify parenting time, while mother argued that the magistrate erred by not including Jo.G. when he modified child support.

¶ 7 The district court adopted the portion of the magistrate's order concerning parenting time. However, the court found that the magistrate erred by not including Jo.G. in the child support order. The court modified the magistrate's order; calculated the child support obligation for Jo.G.; and ordered father to pay mother $767 per month for Jo.G. (which was an obligation independent from the $820 per month mother paid for E.G.).

## II. Standard of Review

¶ 8 Our review of a district court's order on a petition for review of a magistrate's ruling is effectively a second layer of appellate review. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105,

¶ 11. We review de novo whether the magistrate and the court applied the correct legal standard. *Id.* We also review de novo their conclusions of law, and we accept the magistrate's factual findings unless they are clearly erroneous. *Id.*

### III. Parenting Time Concerning E.G.

¶ 9 Father contends that the magistrate misapplied the law when denying his motion to modify parenting time. He argues that the magistrate needed to consider only the best interests of E.G. but improperly required him to establish endangerment under section 14-10-129(2)(d), C.R.S. 2025. We agree.

### A. Legal Standards

¶ 10 We review a court's order modifying parenting time for an abuse of discretion. *In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010). A court abuses its discretion when it misapplies the law, or when its decision is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45.

¶ 11 Generally, a court may modify a parenting time order whenever the modification would serve the child's best interests. § 14-10-129(1)(a)(I); *see also* § 14-10-124(1.5)(a), C.R.S. 2025 (best interests factors).

¶ 12     However, when a parent seeks a substantial modification of parenting time that also changes the parent with whom the child resides a majority of the time, a heightened standard applies.  § 14-10-129(2).  Under this heightened standard, the court must retain the prior parenting time order unless, as relevant here, it finds that the child's present environment endangers the child's physical health or significantly impairs the child's emotional development.  § 14-10-129(2)(d).

¶ 13     Relatedly, a court shall not restrict parenting time rights unless it finds that parenting time endangers the child.  § 14-10-129(1)(b)(I).

### B.    Analysis

¶ 14     Father, relying on the recommendations of the child and family investigator, asked the magistrate to allocate him primary parenting time with E.G. and limit mother's parenting time to two weekends per month.  The magistrate characterized father's request as seeking a "substantial modification" of the existing equal parenting time schedule.  The magistrate then determined that "the additional requirements of [section] 14-10-129(2)" and the requirements of *In re Marriage of West*, 94 P.3d 1248, 1250-51

(Colo. App. 2004), required father to demonstrate "endangerment to qualify for the requested modification." The magistrate found that father failed to establish this "threshold requirement" and denied his motion.

¶ 15     The district court adopted the magistrate's ruling, concluding that the "magistrate properly analyzed whether this substantial change [of parenting time] was appropriate under [section] 14-10-129(2)."

¶ 16     Contrary to the magistrate's and the district court's conclusion, section 14-10-129(2) does not apply to father's motion to modify. That section requires not only a substantial change to the parenting time schedule but also a "change[] [to] the party with whom the child resides a majority of the time." *Id.* A modification of an equal allocation of parenting time does not change the parent with whom the child resides a majority of the time because under an equal parenting time schedule, the child does not reside a majority of time with either parent. *See In re Marriage of Newell*, 192 P.3d 529, 533 (Colo. App. 2008); *In re Marriage of Stewart*, 43 P.3d 740, 742 (Colo. App. 2002). Accordingly, when parents share equal parenting responsibilities, a modification of that arrangement

is governed by the best interests standard, not the endangerment standard set forth by section 14-10-129(2)(d). *Stewart*, 43 P.3d at 742; *see also In re Marriage of DeZalia*, 151 P.3d 647, 649 (Colo. App. 2006) (acknowledging that modifying an equal allocation of parenting time closely resembles an initial allocation of parenting time because both decisions arise from situations in which the parents share the legal and physical care of the child).

¶ 17    Nor do we agree that *West* supports application of the endangerment standard under the circumstances here. In *West*, 94 P.3d at 1250, a division of this court considered whether a district court's order modifying parenting time amounted to a restriction under section 14-10-129(1)(b)(I) and required the court to find endangerment. The division held that when deciding whether to apply the best interests standard or the endangerment standard, a court "inquir[es] into both the quantitative and the qualitative aspects of the proposed change to parenting time, as well as the reason or reasons advanced for the change." *Id.* at 1251. The division determined that an order, which reduced the father's summer parenting time from eight to six weeks, was "neither a qualitative change in the nature of father's parenting time," nor a

change based on the children's safety. *Id.* It then determined that the "purely quantitative change . . . of relatively limited magnitude" was not a restriction and concluded that the district court correctly applied the best interests standard. *Id.*

¶ 18 Here, like *West,* father's proposed modification did not seek a qualitative change to mother's parenting time. *See id.* (recognizing that a qualitative change to parenting time means a change in the nature of a parent's parenting time, such as supervised visitation). Even though father raised concerns about mother's parenting time with E.G., he did not seek to deny or restrict her parenting time or obstruct her relationship with E.G.

¶ 19 Father thus sought only a quantitative change to the parenting schedule, arguing that E.G. would benefit from more time with him. And in *West,* the division determined that the purely quantitative modification was not a restriction. *See id.* While that modification was "of relatively limited magnitude," *West* did not say whether a more substantial quantitative change would constitute a restriction. *Id.* Rather, the division observed that most cases concerning a parenting time restriction "involve outright denial of visitation or require supervised visitation." *Id.*

¶ 20     But to the extent the language in *West* may suggest that a quantitative reduction to parenting time, if substantial enough, could constitute a restriction, we are not convinced that the magistrate properly made that determination here. The magistrate merely made the conclusory finding that the request was a "substantial modification" that triggered *West*. The magistrate gave no explanation for why father's proposal, which would have allowed mother to still exercise, at least, seventy-two overnight visits per year, rose to the level of a restriction. Moreover, the district court determined that although the magistrate may have looked to *West*, the magistrate analyzed father's proposed modification under section 14-10-129(2), not as a restriction under section 14-10-129(1)(b)(I).

¶ 21     In any event, *In re Marriage of Dale*, 2025 COA 29, ¶ 32 (*cert. granted in part* July 21, 2025), recently held that "a restriction on a parent's parenting time rights means an order imposing a qualitative control over the manner, location, or environment in which the parent engages in parenting time." The *Dale* division further concluded that "a purely quantitative reduction in a parent's

9

parenting time is not a restriction on that parent's parenting time rights." *Id.*

¶ 22 Mother attempts to save the denial of father's motion by arguing that the magistrate also made findings under the best interests standard. However, to the extent that the magistrate addressed E.G.'s best interests, the analysis related solely to reducing the number of parenting time exchanges, which the magistrate determined warranted modifying the schedule to a week-on/week-off schedule during the school year. Nothing in the order indicates that the magistrate considered the best interests standard or made findings concerning the best interest factors when analyzing father's proposed modification.

¶ 23 The magistrate thus misapplied the law by applying the endangerment standard to father's motion to modify parenting time. We therefore reverse the portion of the district court's order adopting the magistrate's denial of this motion. We remand the motion to the district court for reconsideration under the best interests standard. *See* § 14-10-124(1.5)(a); § 14-10-129(1)(a)(I). On remand, the court must consider the parties' and E.G.'s current circumstances and provide the parties with an opportunity to

present evidence concerning such circumstances. *In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27.

## IV.    Child Support Concerning Jo.G.

¶ 24    Father next argues both the magistrate's finding regarding Jo.G.'s disability and the district court's inclusion of Jo.G. for child support should be reversed. We disagree.

### A.    Legal Standard

¶ 25    The court may modify child support when, based on the facts and circumstances, there is a showing of substantial and continuing changed circumstances. § 14-10-122(1)(a), C.R.S. 2025; *In re Marriage of Gross*, 2016 COA 36, ¶ 15. We will not disturb a court's child support determination absent a showing that the court abused its discretion. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.

### B.    The Magistrate's Disability Finding

¶ 26    Father contends that the magistrate applied the "incorrect legal standard" in finding that Jo.G. was disabled. He argues that (1) the original disability finding in 2020 was based solely on Jo.G.'s rheumatoid arthritis; (2) her rheumatoid arthritis is now in remission; and (3) the magistrate could not rely on any other medical condition Jo.G. developed after the age of emancipation.

11

Mother responds that father did not preserve this argument. We agree and decline to review this unpreserved contention.

¶ 27  "Our judicial system depends upon the orderly presentation and preservation of issues." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18. To preserve arguments for appellate review when the party appeals a district court's order reviewing a magistrate's ruling, the party must present the particular issue in a petition for review and provide the district court with an opportunity to rule on the issue. *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006); *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court."). We will not address an argument not raised in or decided by the district court. *See Melat, Pressman & Higbie*, ¶ 18; *K.L-P.*, 148 P.3d at 403.

¶ 28  In his petition for district court review, father challenged only the denial of his motion to modify parental responsibilities. He did not argue that the magistrate erred by finding that Jo.G. was disabled, let alone contend that the magistrate misapplied the law

12

when doing so.  *See Melat, Pressman & Higbie*, ¶ 18; *K.L-P.*, 148 P.3d at 403.

¶ 29    Still, father claims that he preserved this issue by (1) generally arguing to the magistrate that Jo.G. was not disabled, did not meet the criteria for state or federal disability, and could support herself; and (2) responding to mother's petition for district court review by asserting that Jo.G. could work and generate an income.  But father's general arguments regarding Jo.G.'s continued disability did not preserve all potential avenues for relief on appeal.  *See Valentine*, 252 P.3d at 1188 n.4.  Indeed, in the district court, father never raised the specific legal issue he now asserts in his appellate briefing.

¶ 30    Because father failed to preserve the issue, we will not address his argument that the magistrate misapplied the law in determining Jo.G.'s disability.  *See Melat, Pressman & Higbie*, ¶ 18; *K.L-P.*, 148 P.3d at 403.

### C.    The District Court's Authority to Address Child Support Related to Jo.G.

¶ 31    Father also contends that the district court "exceeded its authority in addressing issues not placed before it in the

[m]agistrate's [d]ecision regarding [Jo.G.'s] support order." He argues that the district court "inappropriately inserted its own findings and opinion into the order without regard to whether this actually conflicted with the [m]agistrate's intent." Father explains that the magistrate made no findings related to Jo.G. when addressing child support and that the magistrate gave no indication he intended to modify the portion of the prior child support order concerning Jo.G. We are not persuaded.

¶ 32 At the hearing on father's motion to modify child support, mother argued that Jo.G. was not emancipated and should be included in the child support calculation. The magistrate agreed with mother that Jo.G. was not emancipated. However, despite finding that father's substantially increased income warranted modifying the prior child support order, the magistrate did not further address child support concerning Jo.G.

¶ 33 In her petition for review, mother argued that the magistrate erred by failing to include Jo.G. in the child support order. The district court agreed, explaining that the magistrate found, with record support, that Jo.G. was not emancipated due to her disability and that the magistrate's failure to address Jo.G. in the

14

child support order was inconsistent with that finding. The court recognized that, under the previous child support order, father was not obligated to pay child support for Jo.G. because she could work and earned a modest income. But the court went on to find that there was no evidence that Jo.G. was *presently* earning an income, and it modified the magistrate's child support order to reflect that circumstance.

¶ 34    A district court reviewing a magistrate's decision shall adopt, reject, or modify the magistrate's order. C.R.M. 7(a)(10) (2025).[2] In deciding the proper disposition, the district court "shall consider the petition for review on the basis of the petition and briefs filed, together with such review of the record," and it may conduct further proceedings as necessary. C.R.M. 7(a)(8); *In re Marriage of Matheny*, 2024 COA 81, ¶ 20.

¶ 35    The district court acted within this authority to modify the magistrate's child support order. A parent's obligation to support a child continues beyond the age of emancipation if the child is mentally and physically disabled. *See* § 14-10-115(13)(a)(II); *Koltay*

---

[2] Since the entry of the orders on appeal, Colorado Magistrate Rule 7 was amended. *See* C.R.M. 7(k) (2026).

*v. Koltay*, 667 P.2d 1374, 1376 (Colo. 1983). The court reviewed the record and concluded that, given the magistrate's finding that Jo.G. was not emancipated, Jo.G. needed to be included in the modified child support order and the magistrate erred by not doing so. *See* C.R.M. 7(a)(8), (9). The court then made additional findings based on the available record and modified the magistrate's ruling to correct the error. *See id.*; *Matheny*, ¶ 20.

¶ 36 We therefore reject father's contention that the court exceeded its authority by including Jo.G. in the child support order.[3]

## V. Appellate Attorney Fees

¶ 37 Mother requests an award of attorney fees on appeal, arguing that father's contentions concerning child support were

---

[3] Father does not contest the district court's or magistrate's calculations on the amount of each parties' child support obligation or the use of two independent support orders. Nor did mother cross-appeal the modified child support ruling. We therefore express no opinion on the amount of the parties' child support obligation or the propriety of the child support calculations under section 14-10-115(8), C.R.S. 2025. *See, e.g.*, *Brubaker v. Colorado Sun*, 2026 CO 18, ¶ 52 (recognizing that "our adversarial system of adjudication 'is designed around the premise' that where, as here, parties are represented by competent counsel, they 'know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020))).

substantially groundless and frivolous.  *See* C.A.R. 38(b) ("If the appellate court determines that an appeal . . . is frivolous, it may award damages it deems appropriate, including attorney fees . . . ."). We deny her request.  *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that an award of attorney fees for a frivolous appeal should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).

## VI.    Disposition

We reverse the portion of the order denying father's request to modify parenting time and remand this issue to the district court for reconsideration consistent with this opinion.  We otherwise affirm.

JUDGE YUN and JUDGE SCHOCK concur.