The PEOPLE of the State of Colorado,
In the Interest of A.R.D. and
K.F.D, Children,

Upon the Petition of Howard B. Miller,
as Guardian/Conservator,
Petitioner–Appellee,

and Concerning R.V.D., Respondent–
Appellant.

No. 00CA0600.

Colorado Court of Appeals,
Div. II.

July 5, 2001.

Rehearing Denied Aug. 30, 2001.

Certiorari Denied April 15, 2002.

St. Clair & Greschler, P.C., Ira E. Greschler, Boulder, CO, for Petitioner–Appellee.

James M. Downey, Fort Collins, CO, for Respondent–Appellant.

Opinion by Judge PLANK.

R.V.D. (father) appeals from the orders determining child support, denying parenting time with his children, A.R.D. and K.F.D., and restraining him from having any contact with the children, their teachers, or their pastor. We affirm.

The marriage between father and the children's mother was dissolved in 1993. Father was incarcerated based upon a conviction of incest, and his parenting time was supervised and limited to phone or mail contact. Mother remarried in 1995 and, according to father, did not allow him further contact with the children after his release. She died in April 1999, and the dissolution action was dismissed.

A separate guardianship petition was filed in the probate court for each child, a son, age ten, and a daughter, age nine. The children's stepfather was appointed as their guardian, and the issue of parenting time was reserved for later consideration in the probate actions. The guardian also filed a juvenile action seeking child support, and all three cases were consolidated for hearing. This appeal concerns the resulting separate orders on parenting time and child support.

The trial court determined that father's testimony that he earned only $1089 per month and subsisted on loans or gifts from his mother was not credible and, therefore, imputed income to him in the amount of $2083 per month. Based upon the finding that the guardian's monthly income was $3000 per month, the court calculated father's monthly child support obligation under the guidelines at $427.12 per month.

Relying upon § 14–10–129, C.R.S.2000, the trial court further determined that father had the burden of proof to show that parenting time was in the children's best interests. The court found, however, that father had produced little or no evidence to meet his burden. The court concluded that it was not in the children's best interests to have any contact with father until he undergoes a certified sex offender evaluation and completes a certified sex offender treatment program.

In addition, the trial court enjoined father from having any contact with the children, from going within 100 yards of the children's residence, school, or church, and from going anywhere the children might frequent. Father was also restrained from contacting the children's teachers or pastor by phone or mail. However, the court ordered the guardian to keep father informed of the children's school progress and physical health.

## I.

■ Father contends that because the cases were filed in the probate court, the trial court erred in applying § 14–10–129 and in imposing the burden of proof on him to show that parenting time was in the children's best interests. We disagree.

The probate court may exercise jurisdiction over "all subject matter vested by article VI of the state constitution and by articles 1 to 10 of title 13, C.R.S." Section 15–10–302(1), C.R.S.2000. Sections 13–9–103(1)(e) and (1)(f), C.R.S.2000, grant the probate court the authority to issue guardianship letters and to administer the guardianship. *In re Estate of Lembach,* 622 P.2d 606 (Colo. App.1980)(the specific enumeration of the Denver Probate Court's subject matter jurisdiction is applicable to all district courts sitting in probate matters).

District courts are "trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein." Colo. Const. art. VI, § 9(1).

Furthermore, § 19–1–104(4), C.R.S.2000, states that "[n]othing in this section shall deprive the district court of jurisdiction to appoint a guardian for a child nor of jurisdiction to determine the legal custody of a child ... when the question of legal custody is incidental to the determination of a cause in the district court," except when a petition involving the same child is pending in juvenile court or the district court requests the juvenile court to make recommendations concerning the child.

Finally, § 14–10–123(1), C.R.S.2000, provides that a proceeding concerning the allocation of parental responsibilities is commenced in the district court or as otherwise provided by law. There is no dispute that a proceeding concerning parenting time is a child custody case and involves the allocation of parental responsibilities. *See* §§ 14–10–124(1.5), 14–13–102(4), C.R.S.2000. Section 14–10–129 establishes the criteria applicable to the determination of parenting time.

In this case, the trial court found that it had previously deferred the issue of parenting time to the district court in the other county where the dissolution proceeding had been filed. However, it further found that the dissolution action was subsequently dismissed. There is no specific provision in the probate code regarding determination of parenting time. And, neither of the excepted situations referred to in § 19–1–104(4) exists here.

Accordingly, we conclude that, having obtained jurisdiction to appoint a guardian for the children, the probate court had the authority to determine the related parenting time issue in accordance with the provisions of § 14–10–129.

Under § 14–10–129(3)(a), C.R.S.2000, the person granted custody of or parental responsibility for the child may object to parenting time by a parent who has been con-

victed of any of the crimes listed in the statute. The offending parent shall have the burden at the hearing to prove that parenting time by such parent is in the best interests of the child.

Here, father was convicted of incest with a daughter from a prior marriage. That crime is enumerated in § 14–10–129(3)(b)(VIII), C.R.S.2000. The court found that father also admitted to exposing himself to a babysitter, improper· sexual contact with a niece, and sexual contact with mother's foster sister. Therefore, the court properly placed the burden on father to show that his exercise of parenting time was in the children's best interests.

## II.

Father next contends that the probate court lacked authority to enter a restraining order and, alternatively, that several procedural requirements were not satisfied, including use of the prescribed form. We disagree.

C.R.C.P. 65(h) provides that C.R.C.P.65, which concerns injunctions and restraining orders, does not apply in certain enumerated instances, such as dissolution of marriage and custody cases. Nevertheless, C.R.C.P. 65(h) further provides that in such cases "the court may make prohibitive or mandatory orders, without notice or bond, as may be just."

Here, the guardian petitioned for a no-contact order between father and the children based upon the opinion of professionals that had evaluated and treated the children. After the hearings in this case, the trial court granted the request.

While the court did not specify the basis for the restraining order, it was entered after dismissal of the dissolution action based upon mother's death. The order was entered after a full hearing on the motions related to parenting time and child support. Therefore, we conclude that the court had authority under C.R.C.P. 65(h) to enter such order, and we are satisfied that the procedure utilized was fair. *Cf. In re Marriage of Davis*, 44 Colo.App. 355, 618 P.2d 692 (1980)(any reason justifying injunction under rule must arise from factors independent of those that

trial court is empowered to deal with in a dissolution of marriage action).

In addition, the findings and record support the implicit determination that a restraining order was just and necessary under the circumstances to protect the best interests of the children. *Cf. Simpson v. Simpson*, 151 Colo. 88, 376 P.2d 55 (1962)(predating adoption of Uniform Dissolution of Marriage Act). Finally, because the restraining order was entered as part of the broader order concerning parenting time, a standard form of order, as recommended in § 13–1–136, C.R.S.2000, was not necessary.

## III.

Father also asserts that the trial court erred in restricting parenting time based upon a preponderance of the evidence rather than upon clear and convincing evidence. He argues that the heightened standard is necessary to protect his fundamental, constitutional right to maintain a relationship with his children. We disagree.

Admittedly, the interest of parents in the care, custody, and control of their children is one of the oldest fundamental liberty interests recognized. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

Nevertheless, findings of fact made under the preponderance of the evidence standard do not violate a parent's due process rights when the trial court significantly limits parental rights in a guardianship proceeding held pursuant to a dependency and neglect proceeding. The preponderance standard is appropriate and constitutional even though an adverse finding may be the basis for a subsequent termination of the parent-child legal relationship. *L.L. v. People*, 10 P.3d 1271 (Colo.2000).

Father argues that *L.L. v. People* is not persuasive, because the purposes underlying a dependency and neglect proceeding do not apply to a probate proceeding, in which the state is not involved. However, father's parental rights were not permanently terminated, and therefore he retains the right, like the mother in *L.L. v. People*, to seek modifi-

cation of his parenting time. *See In re Custody of A.D.C.,* 969 P.2d 708 (Colo.App.1998)(a custody determination is based upon the preponderance of the evidence standard because, unlike a termination case, it continues the biological parent's right to contact with the child and parenting). Furthermore, because § 14–10–129(3)(a) requires conviction of one of the enumerated crimes as a condition precedent to the court considering such an objection to parenting time, that statute affords the additional protection of proof beyond a reasonable doubt. Accordingly, we conclude that the proper standard was applied.

We are not persuaded otherwise by *State in Interest of A.C.,* 643 So.2d 743 (La.1994), a case relied upon by father. Unlike the Louisiana statute applicable there, § 14–10–129(3)(a) does not usurp the court's authority to make an individualized determination of the best interests of a child after a hearing. Rather, application of § 14–10–129(3)(a) is predicated upon a prior conviction. Finally, the statute does not presume that termination of parenting time and contact is in the best interests of every sexually abused child, nor does it require that the court give greater weight to any particular opinion or testimony.

Because we disagree that the clear and convincing standard applied to the determination of parenting time, we necessarily reject father's argument that this court must apply a *de novo* standard of review.

## IV.

■ Father further contends that the trial court denied him access to the courts and improperly delegated its decision-making authority when it limited his right to file a motion for modification of parenting time until after he completes a sex offender treatment program. We disagree.

■ A trial court may impose psychological counseling as a condition precedent to the exercise of parenting time if the best interests of the child dictate such a requirement. *In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988). This discretion to impose conditions is distinguishable from the im-

proper delegation of decision-making authority. *See, e.g., In re Marriage of Elmer,* 936 P.2d 617 (Colo.App.1997).

Here, the court found that the children were emotionally fragile and experiencing problems upon mention of father's name, which included nightmares, bed wetting, and encopresis. The court credited the opinions of the children's therapists that they were not sufficiently stable or emotionally strong enough to tolerate visitation. It was undisputed that father had been incarcerated for incest and had admitted to improper sexual conduct with several underage children. There was considerable evidence that father was still in denial, that he posed a danger to the children, and that they were too fragile even to meet with father in an interactional evaluation or in a supervised setting.

The court determined that until father undergoes certified sex offender evaluation and treatment, it would not entertain a subsequent motion for parenting time. Because compliance with these requirements is within father's control, father was not denied access to the courts. Nor did imposition of the conditions constitute an improper delegation of the court's authority for determining whether parenting time is in the children's best interests. *See In re Marriage of Zebedee, supra.*

## V.

■ Father also contends that the trial court erred in determining the proper amount of child support. He argues that his prior conviction and incarceration resulted in a reduction of income, that his present earning ability was limited to $1089 per month, and that there is no basis for the court's determination that he could earn $25,000 per year. We disagree.

Pursuant to § 14–10–115(7)(a), C.R.S.2000, "income" means actual gross income of a parent, if employed to full capacity, or potential income, if unemployed or underemployed.

The phrase "potential income" is not defined. However, it has been based on a party's historical income, *see, e.g., In re Marriage of Bregar,* 952 P.2d 783 (Colo.App.1997), or income prior to a recent resignation

from a job after winning the lottery. *See In re Marriage of McCord,* 910 P.2d 85 (Colo. App.1995). It has also been described as the amount a parent could earn from a full-time job commensurate with the parent's demonstrated earning ability, without regard to the availability of actual positions. *See In re Marriage of Mackey,* 940 P.2d 1112 (Colo. App.1997). Potential income may be inferred from a synthesis of the evidence. *In re Marriage of Elmer, supra.*

 The determination of the credibility of witnesses, the weight, probative force, and sufficiency of the evidence, and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court. *In re Marriage of Elmer, supra.*

Here, the trial court found that father had an M.B.A. degree, a real estate broker's license, and many years of experience. The court recognized that father's employment opportunities were likely limited as a result of his incarceration, but found that he had not presented any evidence of attempts to find gainful employment. The court also concluded that father's testimony was not credible.

Father testified that he had not had a real estate listing for about a year and that his last sale was approximately four months prior to the hearing. Nevertheless, the record showed that despite father's limited income, he had recently incurred a monthly obligation of $1000 per month for housing. Father also listed monthly expenses of over $1600 per month, including his prior housing expense of $500 per month.

Thus, the court's determination that father was voluntarily underemployed was based upon father's circumstances at the time of the hearing and upon the reasonable inferences that could be drawn from the evidence. *See In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989)(where husband had undergraduate degree and trade license, court could determine he was capable of earning $2000 per month).

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

## VI.

 Finally, we reject the guardian's request for an award of damages and costs. Under C.A.R. 38(d), if an appellate court determines that an appeal is frivolous, it may award just damages and single or double costs to the appellee. This appeal was not frivolous. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The orders are affirmed.

Judge NEY and Judge STERNBERG \* concur.