In re the MARRIAGE OF Debra
K. McCAULLEY–ELFERT,
Appellee,

and

Michael J. Elfert, Appellant.

No. 01CA0767.

Colorado Court of Appeals,
Div. II.

March 27, 2003.

Cage Williams Abelman & Layden, P.C., Jordan M. Fox, Denver, Colorado, for Appellee.

Marc J. Kaplan Attorney at Law, LLC, Marc J. Kaplan, Denver, Colorado, for Appellant.

Opinion by Judge MARQUEZ.

In this dissolution of marriage proceeding between Michael J. Elfert (husband) and Debra K. McCaulley–Elfert (wife), husband appeals from the trial court's permanent orders insofar as they contain findings that he abused his stepdaughter. We affirm.

The parties married in 1996 and were granted a decree of dissolution in 2000. They have a son who was born in 1997. Wife also has a daughter from a previous marriage, who was born in 1994 and resides with her.

As part of its determinations concerning the allocation of parental responsibility for the parties' son, the trial court found that husband had committed acts of domestic violence against wife and had been a perpetrator of child abuse or neglect as defined in § 18–6–401, C.R.S.2002. Specifically, the court found credible wife's testimony that she had observed husband engaging in inappropriate sexual behavior with her daughter. Husband appeals from this latter finding.

### I.

Because husband does not challenge the court's allocation of parental responsibility regarding the parties' son, our review of the court's permanent orders will not affect that allocation. However, the challenged findings regarding the abuse of his stepdaughter pose a risk of continuing stigma. We will, therefore, consider husband's contentions. *See White v. Adamek,* 907 P.2d 735 (Colo.App.1995)(although contemnor no longer faced the possibility of a fine or incarceration, the finding of contempt itself imposed a continuing stigma that could lead to adverse consequences, and therefore, the case was not moot).

### II.

We first reject husband's contention that the trial court erred in entering findings with respect to his stepdaughter because it had no jurisdiction over her.

Husband argues that § 14–10–124, C.R.S. 2002, vests the court with authority to allocate parental responsibility only for the chil-

dren of the marriage being dissolved. Because neither party sought orders regarding the stepdaughter, husband asserts that the court exceeded its jurisdiction in addressing wife's allegations of child abuse against her daughter. He further maintains that his alleged conduct with the stepdaughter is not pertinent to the issues presented to the court concerning the parties' son.

■ We acknowledge that the court had no jurisdiction over the stepdaughter. The matters presented for adjudication to the court in no way involved the rights of the stepdaughter or her relationship with her mother.

■ However, we do not agree with husband that jurisdiction over the stepdaughter was necessary for the trial court to consider evidence of his sexual misconduct in determining the parental responsibility issues raised with respect to the parties' son. Section 14–10–124(1.5)(a)(IX) and (b)(IV), C.R.S. 2002, require the court to give paramount consideration to credible evidence of child abuse or neglect in determining the child's best interest for purposes of allocating parenting time and decision-making responsibility.

■ Indeed, § 14–10–124(1.5)(a)(IX) provides that in determining the best interests of the child for purposes of parenting time, the court shall consider all relevant factors, including: "Whether one of the parties has been a perpetrator of child abuse or neglect under section 18–6–401, C.R.S., or under the law of any state, which factor shall be supported by credible evidence." Section 14–10–124(1.5)(b)(IV) contains an identical wording. It prohibits the trial court from allocating mutual decision-making responsibility over a spouse's objection if the court has made a finding that the other spouse has been a perpetrator of child abuse or neglect.

■ Nothing within these statutory provisions precludes the court's inquiry into the alleged abuse or neglect when it involves other children. Such a restriction would unduly hinder a court's ability to carry out the statutory directive of assessing all relevant factors when making the best interests determination. Evidence of abuse or neglect, even when the victim is unrelated to the perpetrator, is probative of the overall home environment and the interaction of the parties with their children, issues that lie at the core of any parental responsibility or parenting time proceeding. *See People in Interest of A.R.D.,* 43 P.3d 632 (Colo.App.2001)(in parenting time determination, court considered evidence of improper sexual contact with unrelated children and conviction of incest with daughter from a prior marriage); *see also Thompson v. Thompson,* 559 So.2d 4 (La.Ct.App.1990)(stepfather's sexual misconduct with his own daughter was adequate basis for award of sole custody to father and restricted visitation to mother); *In re Welfare of H.M.P.W.,* 281 N.W.2d 188 (Minn.1979)(father's prior convictions for unlawful sexual conduct were sufficient to support the termination of parental rights even though there was no proof that he had harmed his children); *Brown v. Brown,* 154 Vt. 625, 580 A.2d 975 (1990) (trial court properly admitted and considered evidence that husband had sexually abused his stepdaughter in determining whether he should be awarded visitation with the parties' child). Therefore, husband's reliance on § 14–10–124(2), C.R.S.2002, which instructs the trial court to disregard a party's conduct if it does not affect that party's relationship to the child, is misplaced.

### III.

Husband next contends that the trial court erred in its determination that he had committed child abuse as it is defined in § 18–6–401 because the rules and constitutional protections afforded criminal defendants generally were not extended to him. He argues that § 14–10–124(1.5)(a)(IX) does not permit the domestic relations court, under the rules of civil procedure and by a preponderance of the evidence, to determine whether the criminal statute was violated. Again, we disagree.

An appellate court's fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. Interpretive efforts begin with the language of the statute itself. If the statutory language unambigu-

ously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *Martin v. People,* 27 P.3d 846 (Colo. 2001).

Pursuant to § 14–10–124(1.5)(a)(IX) and (b)(IV), the child abuse or neglect must be consistent with the criminal conduct proscribed in § 18–6–401 or the "law of any state." *In re Marriage of Chatten,* 967 P.2d 206 (Colo.App.1998). Under the criminal statute, a person commits child abuse if such person

> causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

Section 18–6–401(1)(a), C.R.S.2002.

Here, the trial court found wife's testimony to be credible and based on that testimony found that husband had been a perpetrator of "spouse abuse" as defined in §. 14–10–124(4), C.R.S.2002, and had been a perpetrator of child abuse or neglect as defined in § 18–6–401, by a preponderance of the evidence. Specifically, the court found that wife's testimony that her daughter was sexually abused was credible.

■ We conclude that the trial court was free to credit her testimony over husband's denials in determining that the abuse had occurred. *See In re Marriage of Laughlin,* 932 P.2d 858 (Colo.App.1997)(trial court's determination as to the credibility of witnesses and the sufficiency and weight of the evidence cannot be disturbed on appeal unless it is manifestly erroneous); *In re Marriage of Agner,* 659 P.2d 53 (Colo.App.1982)(finding of endangerment supported by abundant evidence that, regardless of whether they were actually molested, the children feared such would occur if they were returned to the mother and stepfather's home).

■ Furthermore, while § 14–10–124(1.5)(a)(IX) and (b)(IV) do not state that the factor must be supported by a preponderance of the evidence, those subsections state that it "shall be supported by credible evidence." Conversely, the subsections do not require proof beyond a reasonable doubt.

In other contexts, Colorado courts have suggested that "credible evidence" means something less than a preponderance of the evidence. In *Watso v. Colorado Dep't of Social Services,* 841 P.2d 299 (Colo.1992), the supreme court addressed an argument that the former Child Protection Act of 1987 established two evidentiary standards. The Act then provided that a report of child abuse or neglect could be confirmed only if the allegations contained in the report were supported by "credible evidence." If the subject of the report sought a review hearing, the burden for the county department of social services was by a preponderance of the evidence. The court noted that the standards differ. *See also People v. Preciado–Flores,* 66 P.3d 155, 2002 WL 31357331 (Colo. App. No. 99CA2533, Oct. 10, 2002)(quantum of evidence necessary for a duress instruction is "some credible evidence," alternatively stated as a "scintilla of evidence").

■ We conclude that in the context of § 14–10–124(1.5), "supported by credible evidence" means no more than supported by a preponderance of the evidence. The issues before the court here included the best interests of the child for purposes of determining parenting time and allocating decision-making responsibilities. Determination of these questions is based upon a preponderance of the evidence standard. *See People in Interest of A.R.D., supra.*

■ Although the trial court's finding of abuse may carry a degree of stigma and the potential threat of criminal prosecution, the use of the preponderance standard in domestic proceedings does not offend due process and is adequate to protect a parent from false accusations of sexual abuse while serving the strong societal interest in protecting children from abusive parents. *See People in Interest of O.E.P.,* 654 P.2d 312 (Colo. 1982)(use of fair preponderance of the evidence in the adjudicatory phase of dependen-

cy and neglect action involving claims of sexual abuse complied with the requirements of due process); *People in Interest of A.R.D., supra* (preponderance standard correctly applied in guardianship proceeding where father's parental rights were significantly limited based on his prior conviction of incest and admissions of inappropriate sexual contact with other victims); *Mallory v. Mallory,* 207 Conn. 48, 539 A.2d 995 (1988)(court did not err in applying preponderance standard to determine that husband had sexually abused his daughter, and such evidence supported the restriction of his visitation); *cf.* Colleen McMahon, Note, 39 Cath. Law. 153 (1999)(discussing constitutional rights and the stigma of sexual abuse allegations in child custody proceedings and advocating a clear and convincing standard).

### IV.

Finally, husband contends that the trial court committed reversible error when it allowed testimony from wife indicating he had taken a polygraph test. We disagree.

Evidence of polygraph test results and the testimony of polygraph examiners is per se inadmissible in both criminal and civil trials. *People v. Anderson,* 637 P.2d 354 (Colo.1981); *Valley Nat'l Bank v. Chaffin,* 718 P.2d 259 (Colo.App.1986).

Wife's reference to the polygraph test occurred when she was asked about the factors that made her believe the abuse took place. She replied, "A lie detector test that he took." In response to the objection of husband's counsel, the court ruled that it would allow wife to testify to a lie detector test, but would find that the results were not admissible. The court also stated it would not consider the statement for the truth of the matter asserted, but only to explain wife's attitude about an award of attorney fees. Wife then testified that she believed husband had taken three polygraph tests and that they had convinced her the abuse took place.

In view of the limited purpose for which the testimony was allowed and the court's obvious understanding that the results were not to be considered proof of any wrongdo-

ing, we do not find any reversible error. As wife points out, the unfavorable polygraph results were first disclosed to the court when husband was seeking a continuance to obtain a third test. Consequently, although wife's reference was not cumulative, it did not convey information unknown to the court. In addition, wife's belief was also predicated upon the opinion of the child's therapist and her daughter's demeanor both when she was examined by a doctor and when she was questioned about the episodes.

Thus, the court's findings relative to the abuse allegations were based upon adequate competent evidence that was separate and apart from the lie detector results. We also note the trial court's permanent orders and its order denying husband's motion for reconsideration make no mention of the polygraph tests. *See Mondragon v. Poudre Sch. Dist. R–1,* 696 P.2d 831 (Colo.App.1984)(admission of exhibit containing a statement of the results of a polygraph examination was not improper or prejudicial where the exhibit was admitted to show the necessary procedural requirements had been met, no further evidence regarding the polygraph was admitted, and it was not mentioned in the hearing officer's findings of fact).

The judgment is affirmed.

Judge NEY and Judge CARPARELLI concur.