The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 19, 2024

## 2024COA103

**No. 23CA1114, *In re the Marriage of Capparelli* — Family Law — Dissolution — Disposition of Property — Property Purchased During the Marriage — Marital Debt — Maintenance**

In this dissolution of marriage case, husband challenges the district court's allocation of property and award of maintenance. A division of the court of appeals concludes that the district court erred when it classified a portion of a jointly titled asset as wife's separate property and designated a portion of a debt acquired during the marriage as husband's separate debt. With respect to the jointly titled asset, the division concludes that although wife presented evidence tracing a portion of the jointly titled asset back to her separate premarital property, she failed to present any evidence beyond tracing that the parties intended for any portion of the jointly titled asset to remain her separate property. Based on

this, the division concludes that wife failed to overcome, by clear and convincing evidence, the presumption that the jointly titled property is marital property.

Based on these errors, the division reverses the district court's judgment and remands the case for the district court to reconsider the entire property and debt allocation. And because property division and maintenance are inextricably intertwined, the division also remands the case to the district court for it to reconsider the maintenance award based on the new property and debt allocations and the parties' current economic circumstances.

Court of Appeals No. 23CA1114
Boulder County District Court No. 21DR30454
Honorable Bruce Langer, Judge

In re the Marriage of

Marcello Capparelli,

Appellant,

and

Catherine Cho Capparelli,

Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE WELLING
J. Jones and Richman*, JJ., concur

Announced September 19, 2024

Dietze and Davis, P.C., Tucker M. Katz, Boulder, Colorado, for Appellant

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Marcello Capparelli (husband) appeals the permanent orders entered on the dissolution of his marriage to Catherine Cho Capparelli (wife).  Husband contends that the district court erred when (1) allocating the parties' property and debt by (a) classifying $288,609 from the sale of the parties' marital home as wife's separate property, (b) designating $63,077 of debt from a line of credit to him as his separate debt, and (c) dividing the remaining marital property roughly equally despite his lack of income due to his Parkinson's disease; and (2) awarding him maintenance after (a) imputing income to him and (b) averaging wife's gross income. Because we agree with husband's contentions involving the court's classification of the proceeds from the sale of the marital home and its allocation of the line of credit debt, we reverse the order on those grounds and remand the case for the district court to reconsider the entire property and debt allocation.

¶ 2     And because property division and maintenance are inextricably intertwined, we also reverse the district court's maintenance order and direct the district court on remand to reconsider the maintenance award based on the new property and debt allocations and the parties' then-current economic

1

circumstances. We also, however, address husband's arguments regarding the calculation of the parties' respective incomes for determining maintenance because the issues he raises are likely to arise on remand in a similar posture.

## I.     Background

¶ 3     Husband and wife were married for sixteen years. During the last ten years of their marriage, husband wasn't employed. However, after inheriting nearly $1.5 million upon his mother's death, husband invested those proceeds and earned income from those investments. Wife, on the other hand, was employed throughout the marriage, earning over $195,000 a year during the two years immediately preceding the dissolution of the marriage.

¶ 4     In January 2023, the district court dissolved the parties' marriage and entered permanent orders. Before dividing the marital estate, the court considered whether the proceeds from the sale of the marital home and the line of credit debt against one of husband's investment accounts should be considered marital property. With respect to the proceeds from the marital home, the court found that wife had presented sufficient evidence to trace funds used to purchase the marital home to her pre-marriage

ownership of another property and gifts from her mother, and it awarded her a separate property interest of $288,609 in the marital home. As for the line of credit debt, the parties disputed whether $163,077 of that debt was marital or separate debt. The court found that husband used part of it to pay for his living expenses, but that his spending was far in excess of any reasonable needs. Thus, the court found that $63,077 of that debt was husband's separate debt.

¶ 5    Once it had distributed the marital property, the court awarded husband maintenance of $2,195 per month for eight years and two months. In arriving at the maintenance figure, the court found that wife's monthly income was $16,512.75, based on averaging wife's yearly gross income from the two prior years, and that husband's monthly income was $6,130, based on an estimate of his monthly income from investments and an imputed income of $3,033.

## II.    Property Division

¶ 6    Husband contends that the district court erred when classifying the parties' property and debt by designating (1) $288,609 of the proceeds from the sale of the marital home as

wife's separate property and (2) $63,077 of the line of credit debt as husband's separate liability. We agree with both contentions.

### A. Standard of Review and Applicable Law

¶ 7 In general, the court has broad discretion to determine an equitable division of the marital assets and debts, and we won't disturb its decision absent a showing that the court abused that discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001).

¶ 8 The classification of property and debt as either marital or separate is an issue of law that is based on the district court's factual findings. *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 17; *In re Marriage of Morton*, 2016 COA 1, ¶ 5. While we defer to the court's factual findings when supported by the record, we review de novo its legal determinations. *Vittetoe*, ¶ 17; *Morton*, ¶ 5.

¶ 9 When dividing a marital estate, a district court must first determine whether an asset or debt is marital or separate. § 14-10-113(1), C.R.S. 2024. The court must then enter findings as to the approximate value of the parties' property, *In re Marriage of Wright*, 2020 COA 11, ¶ 4, and marital debt, *In re Marriage of Jorgenson*, 143 P.3d 1169, 1172 (Colo. App. 2006). Finally, after setting aside any separate property, the court must divide the

4

marital property in such proportion as it deems just, ensuring an equitable, but not necessarily equal, division of the estate. *Wright,* ¶ 4; *see* § 14-10-113(1); *see also Balanson,* 25 P.3d at 38 ("[T]he disposition of marital property requires (1) a determination as to whether an interest constitutes property; (2) if so, a classification of such property as marital or separate; and lastly (3) an equitable distribution of the marital property after considering a variety of factors, including the economic circumstances of each spouse."). Whether a district court applied the correct legal standard is an issue we review de novo. *In re Marriage of Fabos,* 2022 COA 66, ¶ 15.

¶ 10 When dividing the marital estate, a statutory presumption exists that property purchased during the marriage is marital property. § 14-10-113(3); *see also In re Marriage of Zander,* 2021 CO 12, ¶ 16; *In re Marriage of Moncrief,* 535 P.2d 1137, 1138 (Colo. App. 1975). However, this marital property presumption may be overcome by evidence establishing that the property in question was (1) acquired by gift, bequest, devise, or descent; (2) acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

5

(3) acquired after a decree of legal separation; or (4) excluded by valid agreement of the parties. § 14-10-113(2)(a)-(d), (3). The spouse claiming that property existing at dissolution is separate because it was owned prior to the marriage has the burden of proof to trace the property back to the original premarital asset. *In re Marriage of Dale*, 87 P.3d 219, 227 (Colo. App. 2003). Thus, as long as assets received during the marriage are traceable to specific premarital property, the assets *may* remain separate property. *See id.* But tracing alone isn't sufficient to establish that jointly titled property maintains its separate character.

¶ 11 Indeed, when a spouse places separate property in joint ownership during the marriage, it's presumed both that the donor spouse intended the property to be a gift to the marriage and that the gifted property is marital property absent clear and convincing evidence to the contrary. *In re Marriage of Krejci*, 2013 COA 6, ¶ 4; *see also Moncrief*, 535 P.2d at 1138 ("[W]hen one spouse causes title to be placed jointly with the other spouse a gift is presumed and the burden to show otherwise is upon the donor."). Thus, while tracing is necessary to support a finding of separate property, it's not sufficient, standing alone, to rebut the presumption that

separate property placed in a jointly titled marital asset was a gift to the marriage. Instead, the fact of separate property must be proved by clear and convincing evidence. *Krejci*, ¶ 4.

### B. Wife's Separate Interest in the Marital Home

¶ 12 Numerous exhibits were admitted at the permanent orders hearing detailing the parties' financial transactions. In addition, with respect to her claim that $288,609 of the proceeds from the sale of the parties' third marital home (Onyx Circle home) was her separate property, wife testified as follows:

- Before the parties were married, wife owned a condominium in New Jersey, and she used $188,806 from the sale of that property as a down payment on the parties' first marital home (Lucille Court home).

- The couple sold the Lucille Court home to buy their second marital home (Spring Creek Circle home), and they used the proceeds from the Lucille Court home, plus another $100,000 wife received as a gift from her mother, for the down payment on that house, which was placed in joint tenancy.

- While trying to sell the Spring Creek Circle home, the couple purchased the Onyx Circle home, which was also placed in joint tenancy. A portion of the purchase price of the Onyx Circle home came from a Morgan Stanley line of credit in husband's name; after they sold the Spring Creek Circle home, they used the proceeds from that sale to repay the portion of the Morgan Stanley line of credit used to finance the purchase of the Onyx Circle home.

¶ 13 In its permanent orders, the district court indicated that it heard testimony from wife regarding funds from "[premarital] gifts and real estate sales and received Exhibits F, G, and H supporting a tracing of the funds." The court expressly found wife credible and, without elaborating, found that the evidence supported a finding that wife had a separate property interest of $288,609 in the proceeds from the sale of the Onyx Circle home.

¶ 14 It was undisputed that the Onyx Circle home was acquired during the parties' marriage. Thus, it and the proceeds from its sale are presumed to be marital property. *See Zander*, ¶ 16; *see also* § 14-10-113(3). Still, wife could begin to overcome this

presumption by tracing the proceeds from the Onyx Circle home sale back to an original premarital asset or gift. *See Dale*, 87 P.3d at 227. However, because wife used those separate assets to help purchase the jointly titled Lucille Court and Spring Creek Circle homes, she would also need to prove that she didn't intend to make a gift to the marriage. *See Krejci*, ¶ 4; *In re Marriage of Cardona*, 321 P.3d 518, 521 (Colo. App. 2010) ("Premarital property that is placed in joint tenancy by a spouse during the marriage . . . reflects an intent by the donor spouse to make a gift to the marriage, and such property is presumed to be marital absent clear and convincing evidence to the contrary."), *aff'd on other grounds*, 2014 CO 3; *Moncrief*, 535 P.2d at 1138.

¶ 15 By crediting wife's testimony and allocating $288,609 of the proceeds from the Onyx Circle home sale as separate property to her, the district court implicitly found that wife (1) sufficiently traced the assets back to the home she owned before the marriage and to a gift from her mother and (2) proved by clear and convincing evidence that she didn't intend to gift that money to the marriage. The record, however, is bereft of any evidence regarding the latter point.

¶ 16    Although afforded the opportunity to do so, wife failed to present any evidence, let alone clear and convincing evidence, that she didn't intend for the proceeds from the sale of her premarital home and the $100,000 gift from her mother to be gifts to the marriage when she used that money to purchase each of the three jointly titled marital homes.  This lack of evidence is fatal to her claim that any portion of the proceeds of the Onyx Circle home sale is her separate property.  *See In re Marriage of Stumpf*, 932 P.2d 845, 848 (Colo. App. 1996) ("[I]n the absence of appropriate evidence that the property was excluded from being marital property by a valid agreement of the parties, such a transfer must be understood as evidencing an intention to transfer the property to the marital estate.") (citations omitted).

¶ 17    Simply put, the evidence presented at the permanent orders hearing — which focused exclusively on tracing funds but not the parties' intent — was inadequate to overcome the strong presumption that the jointly titled homes, including the Onyx Circle home, were marital property.  Accordingly, the evidence doesn't support the court's finding that $288,609 of the Onyx Circle home's proceeds are wife's separate property.  Therefore, we reverse the

property division and remand the case for the court to reclassify the proceeds from the sale of the Onyx Circle home as a marital asset and to equitably redivide the marital estate in accord with section 14-10-113.

### C. Allocation of Separate Debt to Husband

¶ 18 The process for allocating debts is similar to that for dividing assets. Like with assets, before the court may divide the marital estate it must also determine whether a party's debt is marital and subject to the court's equitable division or separate and shielded from division. *See* § 14-10-113(1); *In re Marriage of Corak*, 2014 COA 147, ¶ 9; *see also Jorgenson*, 143 P.3d at 1171-72 (recognizing that the allocation of marital debts is in the nature of property division). "Marital liabilities include all debts that are acquired and incurred by [the parties] during their marriage." *Jorgenson*, 143 P.3d at 1172.

¶ 19 The classification of a debt as marital or separate is a legal determination based on the court's factual findings. *Morton,* ¶ 5. While we defer to the factual findings when supported by the record, we review de novo the court's legal determination. *Id.*

11

¶ 20    During the parties' marriage, husband accessed a line of credit secured by one of his investment accounts.  When the court entered the permanent orders, that debt was $733,077.  In his property division spreadsheet and during his testimony at the hearing, husband stipulated that $570,000 of this debt was his separate debt that he had incurred to purchase his current, nonmarital home.  Thus, we don't further address the court's decision to categorize that part of the line of credit debt as husband's separate debt.

¶ 21    As for the remaining $163,077 of the line of credit debt, the court found that husband had incurred it to pay for his living expenses during the pendency of the divorce proceedings, but that his spending was "far in excess of any 'reasonable needs.'"  Thus, the court found that $100,000 of the $163,077 debt would be considered marital debt and the $63,077 balance was husband's separate debt.

¶ 22    Although the court may consider the economic fault of the parties when dividing marital property, *see Jorgenson*, 143 P.3d at 1173, that concept shouldn't be applied when characterizing whether an asset or debt is marital or separate.  The character of a

debt as marital depends on when it was acquired. And debt incurred during a marriage is marital debt. *See In re Marriage of Speirs*, 956 P.2d 622, 624 (Colo. App. 1997). Because the line of credit debt was incurred during the marriage, it is marital debt. *See Jorgenson*, 143 P.3d at 1172; *Speirs*, 956 P.2d at 624.

¶ 23    The court based its decision that $63,077 of the line of credit debt was husband's separate debt on its finding that husband "accessed the account to support an extravagant lifestyle" and that husband's spending was far in excess of any reasonable needs. Although wife testified at the hearing about husband's excessive spending after they separated and provided some supporting documentation, the court failed to make any detailed findings to explain how it came up with the $100,000/$63,077 split after accounting for the portion of that debt solely related to husband's new home.

¶ 24    Consequently, to the extent the court made findings about how husband spent money in excess of his reasonable needs, such consideration relates to the court's determination of an equitable allocation of the marital debt, but it doesn't permit the court to exclude the debt from the marital estate. Husband's line of credit

13

debt, aside from the $570,000 he agreed was his separate debt because it financed his current home, was marital debt, and the court was required to allocate it in its division of the marital estate. *See* § 14-10-113(1) (The court "shall divide the marital property.").

¶ 25     Treating that portion of the line of credit debt that wasn't used to purchase husband's current home as marital debt in no way forecloses the district court's ability to allocate such debts to the spouse actually incurring them. *See id.*; *Wright,* ¶ 3 (an equitable division of the marital property need not be equal). Rather, including such debts in the class of marital liabilities enhances the trial court's ability to enter the most equitable distribution of the marital estate based on all of the circumstances affecting the parties' situations at the time of dissolution. *See Speirs,* 956 P.2d at 624; *cf. Balanson,* 25 P.3d at 37-38 (reversing the court of appeals' determination that the misclassification of an asset as separate was harmless based on the district court's "alternative finding that even as separate property, the gifts constituted an economic circumstance of Wife that was relevant in determining an equitable property division").

D.    Summary of Challenges to Property and Debt Allocation

¶ 26    Based on our resolution of the issues discussed above, we reverse the permanent orders and remand the case to the district court for it to re-examine the property allocation.  In doing so, the court must reclassify both the proceeds from the sale of the Onyx Circle home and $163,077 of the line of credit debt as marital property.  But because no party challenged the valuation of any marital asset — and because the marital estate is valued as of the date of the decree of dissolution, *see* § 14-10-113(5) ("[P]roperty shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree."); *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996) — the court should use the same property and debt valuations it found in its permanent orders.[1]  Because that reclassification will materially change the overall value of the

---

[1] To be clear, the record is similarly close on the question of whether other assets or debts are classified as marital or separate. Both parties had a full and fair opportunity to present evidence regarding this issue.  And because the relevant time of the parties' intent regarding jointly titled property is at the time of the acquisition of such property, there is no basis for permitting either party to have a second bite at this apple.

15

marital estate at the time of the decree, the court must re-examine the entire property division on remand based on the parties' current economic circumstances. *See Krejci*, ¶ 18 (noting that change in the composition of the marital estate requires reconsideration of the entire property distribution); *Cardona*, 321 P.3d at 522 ("The court should reconsider the property division based on the parties' economic circumstances existing on remand." (first citing *In re Marriage of Wells*, 850 P.2d 694, 697 (Colo. 1993); and then citing *In re Marriage of Powell*, 220 P.3d 952, 961 (Colo. App. 2009))). Consequently, we don't separately address husband's claim that the court erred by dividing the marital estate equally.

## III.    Maintenance

¶ 27    Husband also contends that, in determining the amount of maintenance to award, the district court erred when it (1) averaged wife's annual salary for the two years immediately preceding the permanent orders hearing and (2) imputed income to him.

¶ 28    Because we have reversed the property and debt division and remanded the case to the district court to reconsider that issue, the court must also reconsider maintenance "in light of the updated property division," *In re Marriage of de Koning*, 2016 CO 2, ¶ 26,

taking into account the revised property division and the parties' current health and economic circumstances, *see Wells*, 850 P.2d at 697-99; *see also Cardona*, 321 P.3d at 525 ("Because the issues of property division and maintenance are inextricably interwoven, the trial court must reconsider maintenance in conjunction with its review of the property distribution on remand."). And the court, within its discretion, may receive additional evidence on this issue. *See Corak*, ¶ 21.

¶ 29    Nevertheless, because the issues husband raises regarding averaging wife's income and imputing income to him are likely to arise in a similar posture on remand, we briefly address those arguments below. *See Jorgenson*, 143 P.3d at 1173.

A.    Standard of Review

¶ 30    We review the district court's award of maintenance for an abuse of discretion. *Vittetoe*, ¶ 14. We defer to the district court's factual findings unless they are clearly erroneous. *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010).

¶ 31    Whether potential income should be imputed to a spouse is a factual issue, and the district court's factual findings are entitled to deference on review if supported by the record. *People v. Martinez,*

70 P.3d 474, 480 (Colo. 2003). The district court must make specific findings to inform an appellate court of the basis of its income imputation order. *In re Marriage of Campbell*, 140 P.3d 320, 324 (Colo. App. 2006).

## B. Wife's Income

¶ 32 When determining maintenance, the district court must determine the parties' actual gross incomes. § 14-10-114(3)(a)(I)(A), (8)(a)(II), C.R.S. 2024. Bonuses and commissions are to be included in a determination of income. § 14-10-115(5)(a)(I)(C), (E), C.R.S. 2024. In situations where a party's income fluctuates or there is conflicting evidence regarding the income amount, the district court may, in its discretion, consider and use an average of the party's past income. *See In re Marriage of Salby*, 126 P.3d 291, 299 (Colo. App. 2005).

¶ 33 At the permanent orders hearing, wife testified that her income fluctuates based on bonuses and commissions and testified regarding her fluctuating income in the two years immediately preceding the hearing. Based on this testimony, the court found that the best measure of wife's income could be reached by averaging her total income over the two years immediately

18

preceding the permanent orders hearing. There was nothing improper in the district court's approach to calculating wife's income based on the evidence that was before it at the permanent orders hearing. Of course, whether this same approach is warranted on remand depends on the evidence presented, including whether wife's income has continued to fluctuate.

### C. Imputed Income to Husband

¶ 34 If a party is voluntarily unemployed or underemployed, maintenance is calculated based on the party's potential income. § 14-10-114(8)(c)(IV).

¶ 35 "Potential income" is the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability. *People in Interest of A.R.D.*, 43 P.3d 632, 637 (Colo. App. 2001). In determining potential income, the district court may consider several factors, including the party's historical income, education, and work experience. *See id.*

¶ 36 It is undisputed that husband has Parkinson's disease, a progressively physically debilitating condition. Conflicting testimony was presented at the permanent orders hearing regarding

husband's ability to work as a guitar instructor and his earning potential as an instructor or in some other capacity.

¶ 37    While the court acknowledged that husband has physical limitations, it nonetheless found that he was voluntarily unemployed and imputed income to him based on an assumption that he could work twenty hours a week as a guitar instructor. Based on the record that was before the court at the time of permanent orders, we don't discern any abuse of discretion. *See id.* But given the degenerative nature of husband's condition, the court will have to consider the husband's circumstances at the time of the post-remand hearing in determining whether imputing income is warranted and, if so, how much income to impute.

## IV.    Disposition

¶ 38    The district court erred by determining that wife had a separate property interest in the proceeds from the Onyx Circle home sale and that $63,077 of the line of credit debt was husband's separate debt, not marital debt. Therefore, the property division portion of the permanent orders is reversed, and the case is remanded to the district court for reconsideration of that issue and

of maintenance based on the revised property division and the parties' then-current physical and economic circumstances.

JUDGE J. JONES and JUDGE RICHMAN concur.