25CA0407 Parental Resp Conc CDG 10-09-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0407
Summit County District Court No. 22DR29
Honorable Reed W. Owens, Judge

In re the Parental Responsibilities Concerning C.D.G., a Child,

and Concerning Shannon McDonough Wehner,

Appellee,

and

Stephen Gladstone,

Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

No Appearance for Appellee

Stephen Gladstone, Pro Se

¶ 1     In this post-decree proceeding involving Shannon McDonough Wehner (mother) and Stephen Gladstone (father), father appeals the district court's order restricting his parenting time with C.D.G. (the child). We affirm.

## I.     Background

¶ 2     In 2022, mother petitioned for an allocation of parental responsibilities. In 2023, the district court entered permanent orders granting mother sole decision-making responsibilities and establishing a step-up parenting plan for father. The step-up plan required him to, among other things, participate in individual therapy and engage in family therapy with the child.

¶ 3     In 2024, the district court entered an order placing any overnight parenting time "on . . . hold until the therapeutic components can be resumed or replaced appropriately" (the 2024 order). Father appealed.

¶ 4     While the 2024 appeal was pending, the child's legal representative moved to further restrict father's parenting time pursuant to section 14-10-129(1)(b)(I), C.R.S. 2025. After a contested hearing, the district court granted the motion in part (the 2025 order).

¶ 5     Because the 2025 order rendered any issues relating to the 2024 order moot, a division of this court dismissed the 2024 appeal. *In re Parental Responsibilities Concerning C.D.G.*, (Colo. App. No. 24CA1792, April 21, 2025) (not published pursuant to C.A.R. 35(e)); *see People in Interest of Yeager*, 93 P.3d 589, 592 (Colo. App. 2004) (an appellate court will decline to render an opinion on the merits of an appeal when the judgment on appeal becomes moot because of subsequent events or orders).

¶ 6     Father now appeals the 2025 order.

## II.     The Scope of this Appeal

¶ 7     Father represents himself on appeal. Doing so can be difficult, which is why "we liberally construe his filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8. Accordingly, we seek to effectuate the substance, rather than the form, of his briefing. *People v. Cali*, 2020 CO 20, ¶ 34. However, we will not rewrite his arguments or act as an advocate on his behalf. *Johnson v. McGrath*, 2024 COA 5, ¶ 10.

¶ 8     Therefore at the outset we address what is — and what is not — properly before us.

¶ 9    The only order properly before us is the 2025 order restricting father's parenting time.  That order prevents father from having "contact or communication" with the child outside of a therapeutic setting and requires him to participate in family therapy separately from the child as recommended by the family therapist until certain conditions are met.  We will address father's contentions related to the 2025 hearing regarding (1) the standard of proof used by the district court; (2) record support for the restriction of his parenting time; and (3) evidentiary issues.

¶ 10    However, any other orders that father seeks to challenge are not properly before us.  *See In re Marriage of Roosa*, 89 P.3d 524, 529 (Colo. App. 2004) (We will not engage in a "[p]iecemeal review of orders and judgments that do not fully resolve an issue or claim."); *see also* C.A.R. 1(a) (explaining that our jurisdiction is limited to a review of final, appealable judgments or orders).  Old judgments that were not timely appealed have become final and binding on the parties and can no longer be addressed.  *See Karr v. Williams*, 50 P.3d 910, 912 (Colo. 2002).  Therefore, we will not address father's claims regarding (1) a "motion to dismiss for malicious prosecution" that the district court denied in 2022; (2) the appointment of the

3

child's legal representative, which he reports is pending in separate litigation; or (3) the "over forty motions" filed by father during the course of the case.

¶ 11 Nor can we consider father's broad assertions and conclusory arguments that lack legal or factual support. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (an appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims). Therefore, we cannot address father's general and undeveloped claims of "collusive conduct," "coordinated efforts," "fraud on the court," due process violations, retaliation, and surveillance.

¶ 12 Finally, we may not address father's requests to appoint his preferred reunification therapist, reinstate his parenting time, and address his concerns with the child's legal representative. "The purpose of an appellate court is to *review* judgments, not to make them for the trial court." *In re Org. of N. Chaffee Cnty. Fire Prot. Dist.*, 544 P.2d 637, 638 (Colo. 1975).

¶ 13    We turn now to father's challenges to the 2025 order restricting his parenting time.

### III.    Restriction of Father's Parenting Time

#### A.    Standard of Proof

¶ 14    Citing *Troxel v. Granville*, 530 U.S. 57 (2000), and *Santosky v. Kramer*, 455 U.S. 745 (1982), father contends that the district court erred by employing a preponderance of the evidence standard instead of the clear and convincing evidence standard.  However, father's reliance on *Troxel* and *Santosky* is misplaced.  In *Troxel*, the Supreme Court considered the appropriate standard when a nonparent is seeking visitation over a fit parent's objection.  *Troxel*, 530 U.S. at 69-70.  In *Santosky*, the Court considered the correct standard when a state actor seeks to terminate parental rights.  *Santosky*, 455 U.S. at 769-70.  But here, there was no outside party seeking visitation with the child, and father's parental rights were not terminated.

¶ 15    Instead, the order restricting father's parenting time was a custody determination between two parents.  With such a determination, preponderance of the evidence is the appropriate

standard of proof.  *People in Interest of A.R.D.*, 43 P.3d 632, 635-36 (Colo. App. 2001).

¶ 16      Therefore, the court did not err in this regard.

### B.      Evidentiary Matters

¶ 17      Father next contends that the district court erred by relying on hearsay, excluding evidence, and ignoring recommendations from his therapist.  We discern no error.

### 1.      Standard of Review and Applicable Law

¶ 18      We review evidentiary rulings for an abuse of discretion.  *Leaf v. Beihoffer*, 2014 COA 117, ¶ 9.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair.  *Id.*

¶ 19      To be properly admitted, evidence presented to the district court must be relevant and reliable.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  A threshold issue for reliability is identification and authentication. Authentication is "a condition precedent to admissibility [and] is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  CRE 901(a).

## 2.    Analysis

¶ 20    Father first claims that the district court erroneously "relied heavily on unverified statements" from the child's therapist.  But the child's therapist did not testify at the 2025 hearing and was not mentioned in the 2025 order restricting father's parenting time.  We therefore reject this claim.

¶ 21    Next, father claims that the district court "excluded critical evidence, including direct media that refuted claims by the mother and therapists."  As best as we can tell, father's claim relates to a folder with documents that he handed to the court and a recording that he attempted to play during the hearing.  As the court explained then, "just because you handed this to [the judge] does not mean that these are admitted exhibits."  Before a court can consider exhibits, the person offering the exhibit must follow the rules of evidence, including requirements that each exhibit be disclosed to the other parties, identified and authenticated, and shown to be relevant to the issue before the court.  CRE 401; CRE 901; C.R.C.P. 16.2(h).  Pro se parties are subject "to the same rules, procedures, and substantive law applicable to a licensed attorney." *People v. Romero*, 694 P.2d 1256, 1266 (Colo. 1985).  Thus, it was

not an abuse of discretion for the court to deny father's request to admit exhibits that he brought to the hearing but did not properly identify or authenticate or that the court deemed irrelevant.

¶ 22    However, the district court did admit the exhibits that father laid a proper foundation for, including a report from the child's school, photos of the child during father's parenting time, and a film of father and the child together.  Father described the film, which was played in open court, as "the most important thing" he brought.

¶ 23    Finally, father claims that the district court ignored statements made by his individual therapist.  Father did not call this therapist as a witness at the hearing.  However, the court accepted into evidence a written report by the therapist dated before the motion to restrict father's parenting time was filed.  Absent any evidence to the contrary, we presume that the court considered and weighed this evidence along with the other evidence properly admitted during the hearing.  *See In re Marriage of Udis*, 780 P.2d 499, 503-04 (Colo. 1989) (appellate court may presume that the district court considered evidence presented, even if the district court's order does not expressly say that it did so).  However, when

considering evidence, a court is not required to adopt or credit that evidence. *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) (The court "can believe all, part, or none of a witness's testimony, even if uncontroverted, and [the court]'s resolution of conflicting evidence is binding on review.").

¶ 24    We therefore discern no error.

### C.    Sufficiency of the Evidence

¶ 25    Father also contends that there was no compelling evidence to justify the restriction of his parenting time because there was no finding that he was an unfit parent. We note that a court is not required to make a finding of unfitness before restricting parenting time. § 14-10-129(1)(b)(I) (requiring a finding that parenting time "would endanger the child's physical health or significantly impair the child's emotional development"). Nevertheless, we will construe his claims broadly as a challenge to the sufficiency of the evidence.

### 1.    Applicable Law and Standard of Review

¶ 26    A court may generally modify an order granting or denying parenting time whenever a modification would serve the child's best interests under section 14-10-124(1.5)(a), C.R.S. 2025. However, the court may not restrict parenting time unless it finds that the

parenting time would endanger the child's physical health or significantly impair their emotional development.  § 14-10-129(1)(b)(I).

¶ 27    As explained above, the court's findings must be supported by a preponderance of the evidence.  *A.R.D.*, 43 P.3d at 635-36.  The preponderance of the evidence standard allows for some uncertainty in the determination of dispositive facts.  *See People in Interest of A.M.D.*, 648 P.2d 625, 634 (Colo. 1982).  The preponderance of the evidence standard requires a fact finder to determine whether the existence of a contested fact is more probable than its nonexistence.  *People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 8.  In other words, preponderance of the evidence means more likely than not.

¶ 28    A district court has "broad discretion when modifying an existing parenting time order," and we review the court's modification decision for an abuse of discretion.  *In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010).

2.    Analysis

¶ 29    The district court found that father's actions during family therapy — including his dysregulation, failure to honor boundaries, and inability to accept advice from the therapeutic providers —

10

created "an emotionally harmful situation" for the child. Specifically, the court found that there was "significant dysregulation" for the child "surrounding his parenting time with father," which resulted in a significant impairment to the child's emotional development.

¶ 30 And, contrary to father's claims on appeal, the district court did not enter a "no contact order." Instead, the court restricted father's parenting time to only family therapy conducted in separate sessions from the child. The court ruled that the restriction on parenting time would be lifted once father addressed his actions that were endangering the child through individual work with both the family therapist and his individual therapist. The court noted that its order resulted in a significant restriction on parenting time but found that "these steps are necessary under the specific circumstances of this case" because family therapy together had been "completely unproductive" and they had been trying to support the child's relationship with father "for years now [with a] lack of progress."

¶ 31 The record supports these findings. The school counselor and school administrative assistant described the child acting fearful,

11

anxious, and "severely withdrawn" on days that father's parenting time was scheduled. The school counselor testified that she had safety concerns for the child based on his behavior on those days.

¶ 32    The family therapist described the last family therapy session, where the child arrived "very dysregulated" and verbalized repeatedly that he was scared, did not want to be there, and did not want to see his father. The therapist testified that it took thirty minutes and "quite a bit of therapeutic intervention" to get the child to agree to participate in family therapy with father.

¶ 33    Although the session went well for some period after father joined, things devolved after the therapist attempted a therapeutic intervention. Father became frustrated and dysregulated, and he disregarded the boundaries he and the therapist had set before the session started. The therapist testified that father's actions adversely affected the child.

¶ 34    The therapist, an expert in family counseling and general psychology, explained that a child's dysregulation or trauma response is not always marked by "screaming and crying." The therapist recommended they separate family therapy until father could demonstrate the ability to be appropriate in session with the

child.  The therapist opined that the child's emotional development would be significantly endangered if parenting time continued in the way that it had, and that it was not in the child's best interests to continue family therapy with father in the room.

¶ 35    In light of this evidence, we discern no abuse of the court's discretion in restricting father's parenting time.  Although father's testimony contradicted the accounts given by the other witnesses, we cannot reweigh the evidence.  *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom).

## IV.    Disposition

¶ 36    The order is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.